Argued October 7, affirmed December 28, 1977

AUTZEN, *Respondent,*

*v.*

JOHN C. TAYLOR LUMBER SALES,

INC., *Appellant.*

(No. 36607, SC 25080)

572 P2d 1322

David P. Templeton, of Martin, Bischoff, Templeton, Biggs & Ericson, Portland, argued the cause for appellant. With him on the briefs was James C. Waggoner, Portland.

Mitchell C. Wall, of Wall and Wall, Portland, argued the cause and submitted the brief for respondent.

Before Denecke, Chief Justice, Howell and Lent, Justices, and Gillette, Justice Pro Tempore.

GILLETTE, J., Pro Tempore.

**GILLETTE, J.,** Pro Tempore.

This is an action for damages for breach of an express warranty in the sale of a used boat. The complaint and the evidence offered to support it suggested four different express warranties: (1) a 1970 booklet proposed by the manufacturer and describing the boat when new; (2) a 1972 survey (the "Meadows" survey) describing the boat at the time Seller obtained it; (3) a 1975 survey (the "Huhta" survey) describing the boat's condition at the time of the transaction under review here; and (4) a statement to Buyer by Mr. Love, agent for Seller, at the time of the transaction under review here that the vessel was in "A-1 condition." Seller denied the existence of any express warranty. The jury returned a verdict for Buyer in the amount of $100,000—the purchase price of the boat—and Seller appeals. We affirm.

Seller's sole assignment of error is the trial court's denial of its motion for a directed verdict. In support of this assignment, Seller makes four contentions: (1) there were no express warranties; (2) if made, the express warranties were not part of the basis of the bargain between the parties; (3) if made, the warranties were true at the time they were formulated; and (4) if made, the warranties were not made "by the Seller." Our review is limited to the question of whether there was evidence from which the jury could have found against Seller on each of the points raised with respect to any one of the four alleged express warranties. *See Zeleny v. Karnosh,* 224 Or 419, 421, 356 P2d 426 (1960).

## THE FACTS

The subject of the controversy is a 50-foot wooden vessel, the Karinda K II. The boat was built in 1970. Defendant corporation (Seller here) bought the boat in 1972. In 1975, Seller decided to sell the boat. Mr. Autzen (Buyer) was interested and inquired about the boat. Phillip Love, who represented the Seller,

suggested that Buyer and his wife visit the boat and examine it, which they did.

Mr. Love and Buyer then met at the Thunderbird Motel in Portland, Oregon, on September 8, 1975, to discuss the sale of the boat. At this meeting, the parties agreed that the total purchase price would be $100,000 and the down payment of $20,000 would be paid at the time of transfer of possession of the boat.

Buyer testified that all during the course of negotiations, Love claimed that the boat was in "A-1 condition." Love insists that he never used the term "A-1 condition," but that at the September 8 meeting, after the purchase price was settled, he had told Buyer: "I believe the boat to be in good shape but let's get a survey on it." (A survey is an examination of the boat for conditions such as dry rot or insect infestation). Buyer replied that a survey would not be necessary, but Love stated that he would like to have one made anyway at his own expense. Buyer testified that Love first suggested having a survey made when they met on the boat the following day, September 9. Whatever the exact time of the statement, there is no dispute that Love volunteered to have a survey made of the boat, Buyer replied that it was unnecessary and Love stated he was going to obtain a survey anyway.

On September 9, the day after the Thunderbird Motel discussion, Buyer and Love met at the boat for a demonstration ride. Love showed Buyer a brochure containing the manufacturer's specifications and a survey made of the boat by one Meadows when Seller purchased the boat in 1972. While there, Love inquired with the owner of the boat yard about having a new survey made. The owner of the boat yard arranged to have a survey of the boat made the following day, September 10, by Mr. Huhta.

Buyer and Love next met on September 12. Buyer again examined the manufacturer's specifications and the 1972 Meadows survey and was informed of the

results of the Huhta survey. Mr. Huhta spent six hours inspecting the boat for dry rot and concluded that the hull of the boat was "very sound" and that the boat "should be well suited for its intended purpose." Buyer gave Love a check for $20,000 and took possession of the boat.

In November, 1975, Buyer discovered that sections of the flying bridge of the Karinda II were weakened by dry rot. He immediately arranged to have the boat taken to Sells Marina for inspection and work; the earliest they could take the boat, however, was January, 1976. The Sells personnel discovered extensive damage—an enormous amount of dry rot and insect infestation—and informed Buyer that there was "a big problem with the boat." The extent of the damage was corroborated by Mr. Huhta who reexamined the vessel in February, 1976. In March, 1976, Buyer's attorney informed Seller that Buyer was revoking his acceptance of the boat.

## THE UNIFORM COMMERCIAL CODE

■ The express warranty provisions of the Uniform Commercial Code, enacted in Oregon as ORS 72.3130, provides:

"(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"* * * * *

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

[ 787 ]

There are two prerequisites to the existence of alleged express warranties made by Mr. Love on behalf of Seller. Initially, there must be an affirmation of fact or description of the goods, and second, the factual affirmation or description must be part of the basis of the bargain.

## THE HUHTA SURVEY

Because there was evidence from which the jury could have found that the 1975 Huhta survey met these prerequisites, we do not reach the question of whether the 1972 Meadows survey, the 1970 manufacturer's specifications, or the Love statement that the boat was in "A-1 condition" could, either standing alone or taken together, also be express warranties. *Zeleny v. Karnosh, supra.*

The Huhta survey concludes that:

> "* * * the cruiser is an excellently constructed heavy-duty type, where [sic] the best lumber and material selected. The vessel is clean, dry, and well ventilated. Owner has taken excellent care of the cruiser. As far as could be ascertained from hull inspection without taking test bores or opening up of areas ordinarily concealed, the hull appears to be very sound and cruiser should be well suited for its intended purpose."

Seller raises several arguments why the Huhta survey does not fall within the express-warranty-by-description provision of ORS 72.3130(1)(b).

■ ■ Seller contends that the Huhta survey cannot constitute an express warranty by description because it was made by someone other than the Seller. Seller misreads the statute. Nothing in ORS 72.3130(1)(b) requires the description to be made by the Seller[1]—the Seller need only introduce it into the bargaining

---

[1] *Compare* ORS 72.3130(1)(b), permitting express warranty by description, *with* ORS 72.3130(1)(a) permitting express warranty by "any affirmation of fact or promise *made by the seller* to the buyer * * *." (Emphasis added). One of the principal differences between the affirmation-of-fact warranty and the description warranty is that the latter need *not* be made by the seller. Nordstrom, *Law of Sales,* § 71, 222 (1970).

process so that it becomes part of the basis of the bargain. *See Antonucci v. Stevens Dodge,* 340 NYS2d 979, 73 Misc2d 173 (1973) (retail automobile dealer's use of manufacturer's brochure created an express warranty by description).

■ Seller then claims that the description was not a part of the basis of the bargain and thus cannot create an express warranty by description. Seller argues that the description was not part of the basis of the bargain because the sale had already taken place before Mr. Love informed Buyer that he would have a survey made. Seller's contention is that the contract for the sale of the boat was final as of the September 8 meeting at the Thunderbird Motel when the purchase price was agreed upon. Buyer had no knowledge that there would even be a new survey made until the next day, September 9, when Love volunteered to have one made.

Seller confuses a "bargain" with a "contract":

"A 'bargain' is not something that occurs at a particular moment in time, and is forever fixed as to its content; instead, it describes the commercial relationship between the parties in regard to this product. The word 'bargain' is not encrusted with pre-Code concepts which had attached themselves to contract formation—notions that a contract came into existence at some specific point in time * * *. The Code's word is 'bargain'—a process which can extend beyond the moment in time that the offeree utters the magic words, 'I accept'." Nordstrom, Law of Sales, § 67, 206 (1971).

In this instance, while the parties had agreed upon the purchase price of the boat, none of the other specifics of the contract had been settled—such as time of payment and transfer of possession. The bargain was still in process. *Cf. Phillips v. Johnson,* 266 Or 544, 514 P2d 1337 (1973). At the time Buyer was first informed of the Huhta survey results, he had not yet taken possession of the boat. While this description did not induce the actual formation of the contract, the jury might have found that it did induce and was

intended by the Seller to induce Buyer's satisfaction with the agreement just made, as well as to lessen Buyer's degree of vigilance in inspecting the boat prior to acceptance.

■ Seller additionally argues that the Huhta survey cannot be a part of the basis of the bargain because when Love volunteered to have the survey made, Buyer indicated it would not be necessary. What was once a matter of indifference to the Buyer, Seller argues, cannot retrospectively be transformed into an essential part of the bargain. Seller emphasizes that nothing in the evidence suggests that Buyer bargained for the survey. The basis of the bargain requirement, however, does not mean that a description by the seller must have been *bargained for.* Instead, the description must go *to the essence of the contract. See Alan Wood Steel Co. v. Capital Equip. Enter. Inc.,* 39 Ill App 3d 48, 349 NE2d 627 (1976). *See also* Legislative Counsel Committee, *Oregon Uniform Commercial Code,* Comment 1, 45 (1962). For the reasons already stated, the jury might properly have found that Love's affirmation of the condition of a $100,000 boat by means of the Huhta survey went to the essence of the contract.

■ Finally, Seller argues that if the survey is found to be part of the basis of the bargain, it would constitute a contract condition rather than a warranty, which was satisfied by the Huhta report. We disagree. Seller points to no evidence, and we have found none, that suggests that the parties intended the making of the survey to be a condition upon which the contract depended. Both logic and the evidence show that it was not the *performance* of the survey but its *content* which mattered to the parties.

■■ Where there is a conflict in evidence whether an express warranty exists, the question is one for the jury. *Gillette Dairy, Inc., v. Hydrotex Industries, Inc.,* 440 F2d 969 (8th Cir 1971); *Alan Wood Steel Co. v. Capital Equip. Enter. Inc., supra; Sylvia Coal v. Mercury Coal & Coke Co.,* 151 W. Va 818, 156 SE2d 1

(1967). And *see generally,* Annot., 67 ALR2d 619, 626 (1959). Whether the Huhta survey constituted an express warranty for which plaintiff could claim a breach was a proper question for the jury.

The judgment is affirmed.