372 So.2d 965 (1979)
CARTER HAWLEY HALE STORES, INC., Appellant,
v.
Joseph J. CONLEY, Appellee.
No. 78-2237.
District Court of Appeal of Florida, Third District.
June 19, 1979.
*966 Blackwell, Walker, Gray, Powers, Flick & Hoehl and James C. Blecke, Miami, for appellant.
Zisser, Robison & Spohrer, P.A., and Norwood S. Wilner, Jacksonville, for appellee.
Before HAVERFIELD, C.J., and BARKDULL and KEHOE, JJ.
PER CURIAM.
The appellant, d/b/a Neiman-Marcus, appeals a judgment awarding Conley $24,000.00 in damages as a difference in value of a diamond as warranted at the time of sale and what it was actually worth at that time.
The cause was tried non-jury. The trial court made findings of fact as follows:
.....
"... After hearing and inspecting the evidence presented, and being fully advised in the premises, the court does find and conclude as follows:
"1. On February 6, 1973, the plaintiff, Joseph J. Conley, bought one pear-shaped diamond of approximately 10.33 carats from defendant, Broadway-Hale Stores, Inc., a/k/a Carter Hawley Hale Stores, Inc., who operated a retail establishment known as Neiman-Marcus, Inc., in Bal Harbour, Florida.
"2. Plaintiff paid $120,000.00 for the 10 carat diamond and a ring setting including two smaller diamonds. By far the bulk of the purchase price went toward the 10 carat diamond. There was ample evidence presented that $120,000.00 was a reasonable price for like 10 carat diamonds as of February, 1973.
"3. Accompanying the diamond as sold by defendant was a report from the GIA bearing date September 8, 1969 and serial number NY 44474. The report, admitted into evidence without objection, described a `pear-shaped brilliant cut' diamond of 10.38 carats, which was the diamond sold to plaintiff. Along with certain measurements that do not concern this case, the report stated under `clarity grade': `Flawless', and under `color grade': `D'. In a scale of color and clarity grade found near the bottom of the report, the `D' color grade was located at the extreme *967 end of the `colorless' section of the scale, and the clarity grade `Flawless' was located at the extreme end of that scale.
"4. Also accompanying the sale, and bearing date February 6, 1973, was a document titled `Jewelry Appraisal for Insurance Purposes' authored by defendant Neiman-Marcus Company of Bal Harbour, Florida. Under item # `OR9847' an item was described as `one pear-shaped diamond weighing 10.38 cts. GIA # NY 4447 `D' Flawless ...'. A replacement value of $120,000.00 was given.
"5. I find that the GIA report of September 8, 1969 and the jewelry appraisal, constituted an express warranty under Section 2-312 of the Uniform Commercial Code [Chapter 672.312, Florida Statutes]. In this connection, I find there to be no conflict in the evidence that the report was presented to plaintiff along with the sale, and that there were no representations made at the time of the sale to dissuade plaintiff from relying on the accompanying report. I further find the report to state facts and not mere opinions. Certainly to an unsophisticated buyer a diamond's rating of color and clarity appear to be objective enough to be relied upon. In this regard, I find that, in accordance with plaintiff's testimony, the specification in the initial GIA report that the purchased diamond was a color grade `D' and clarity grade `Flawless' was the basis on which the purchase was made.
"6. Mr. George Crowningsheild testified that the report of the GIA was universally used and universally accepted as a `pedigree' when it accompanied a diamond. He testified that their reports are often used as a `selling tool' and that frequently they accompany a stone at the point of sale.
"7. Mr. Crowingsheild further testified that the color grade of `D' was the highest color grade awarded by the GIA and the highest and most valuable color grade recognized. He testified further that the clarity grade of `Flawless' was similarly the highest clarity grade recognized for any diamond. The combination of `D-Flawless' was thus the most perfect and most colorless of all stones, and was recognized as being the most desirable rating.
"8. The opinions of Mr. Crowningsheild in this regard were reiterated by plaintiff's expert, Lawrence Messick, the owner of Jason Lord's Jewelers in Palm Beach, Florida.
"9. Plaintiff testified that, some two years after the sale, at the request of an interested buyer, he had taken the diamond to New York for a re-examination by the GIA. A report was issued at that time, bearing date of October 22, 1975 and serial # NY 695948, which was offered into evidence without objection. This second report stated under clarity grade: `internally flawless', and under color grade: `E'. Plaintiff testified that after the second report was obtained, he notified defendant's agents of the discrepancy. This constitutes notice under Section 2-714 of the Uniform Commercial Code [Section 672.714, Florida Statutes].
"10. Plaintiff's damages are properly measured by difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted. Section 672.714(2), Florida Statutes.
"11. As to the difference in 1973 for the diamond in question, plaintiff's expert gave a lower figure of $24,000.00 and upper figure of $47,000.00. Defendant's expert, Mr. Leon, estimated the difference at 20 per cent of the value of the diamond in 1973, or some $24,000.00.
"12. I therefore conclude that the difference in value between the diamond as accepted and the diamond as warranted amounts to $24,000.00.
"Upon the foregoing findings of fact and conclusion of law, it is ORDERED and ADJUDGED as follows:
"1. Plaintiff shall recover from defendant the sum of $24,000.00, plus taxable costs, for which sums let execution issue."
.....
*968 We affirm. Express warranties in the sale of goods are governed by Section 2-313 of the Uniform Commercial Code [Section 672.313, Florida Statutes (1971)]:
"1. Express warranties by the seller are created as follows:
(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." [emphasis added]
Inclusion of the description of all phases of the sale, especially when coupled with justifiable reliance by the buyer, leaves no doubt that the description is part of the basis for the bargain. In fact, as shown by the Official Comments to Section 2-313, all affirmations made by the seller are presumed a part of the basis for the bargain unless proven otherwise:
"In view of the principle that the whole purpose of the law of warranty is to determine what it is that the seller has in essence agreed to sell, the policy is adopted of those cases which refuse except in unusual circumstances to recognize a material deletion of the seller's obligation. Thus, a contract is normally a contract for a sale of something describable and described... .
.....
"... [C]onsideration should be given to the fact that the probability is small that a real price is intended to be exchanged for a pseudo-obligation." (Official Comment 4, § 2-313)
.....
"... [N]o particular reliance on such statements need to be shown in order to weave them into the fabric of the agreement. Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact." (Official Comment 3, § 2-313) [emphases added]
The trial judge found, as a matter of fact, that the 1969 GIA certification and the bill of sale were descriptions of the goods that were part of the basis of the bargain[1] and, therefore, created an express warranty by Neiman-Marcus that the Conley stone conformed to them.
Notably, the intent of the seller is not controlling on whether a warranty arises:
"It is not necessary to the creation of an express warranty that the seller use formal words such as `warrant' or `guarantee' or that he have a specific intention to make a warranty, ..."
Section 672.2-313, Florida Statutes (1971). On the contrary, a warranty arises by action of law if, as earlier argued, a description of the goods is made the basis of the bargain. In Miles v. Kavanaugh, 350 So.2d 1090 (Fla.3d DCA 1977), the court held that a log book showing repairs supposedly made on an airplane created an express warranty of description that the repairs were done. The seller claimed ignorance of the falsity of the log book, and further denied any attempt to extend a warranty. The court held, however, that:
.....
"... [A]n express warranty need not be by words, but can be by conduct as well, such as, the showing of a blueprint or other description of the goods sold to the buyer. ... It is sufficient that the warranty was made which formed part of the basis for the bargain..." [emphasis added]
Appellant's entire argument is based on an exculpatory provision of Section 2-313(2), which reads as follows:
"... [A]n affirmation merely of the value of the goods or a statement purporting *969 to be merely the seller's opinion or commendation of the goods does not create a warranty."
Appellant's argument is, in essence, that the GIA report of September 1969 is really not a "fact" but an "opinion" and, therefore, under the last sentence of subsection (2) above it cannot create an express warranty. Subsection (2) mentions only those statements purporting to be merely the "seller's opinion"; "opinions" of third parties are not precluded from being express warranties. See: Miles v. Kavanaugh, supra. In the instant case, the "opinion" was that of the GIA and not of Neiman-Marcus.
Of course, certain affirmations of the seller amount only to "puffing" and do not give rise to warranties, e.g., the "nicest car in town". These would be "affirmation[s] merely of the value of the goods" or the seller's commendations under the exculpatory provision of Section 2-313(2), relied on by the appellant. However, the GIA certificate makes no mention of value and can hardly be considered "puffing".
What statements are "merely the seller's opinion or commendation"? Official Comment 8 to Section 2-313 indicates that they are statements which in "objective judgment" do not become part of the basis for the bargain:
"Concerning affirmations of value or a seller's opinion or commendation under subsection (2), the basic question remains the same: What statements of the seller have in the circumstances and in objection judgment become part of the basis of the bargain? As indicated above, all of the statements of the seller do so unless good reason is shown to the contrary. The provisions of subsection (2) are included, however, since common experience discloses that some statements or predictions cannot fairly be viewed as entering into the bargain... ." [emphasis added]
Statements falling into this category would be statements upon which the buyer had no right to rely, as when buyer and author of the "opinion" were equally knowledgeable.
As the evidence supported the correctness of the post-sale reports, the trial judge ruled that the diamond is, was on the sale date, and always was color grade "E", which was not the color grade it was warranted to be; thus a breach on the date of sale was established.
Therefore, for the reasons above stated, the judgment under review be and the same is hereby affirmed. See: Section 672.714, Florida Statutes (1971), the section under which this action was brought. The text of 2-714 is set out as follows:
"(1) Where the buyer has accepted goods and given notification (§ 672.2-607(3)) he may recover as damages for any non-conformity of tender the loss resulting in the ordinary course of events from the seller's breach as determined in any manner which is reasonable.
"(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.
"(3) In a proper case any incidental and consequential damages under the next section may also be recovered." [emphasis added]
The statutory scheme leaves no doubt that, when non-conforming tender is delivered, it is the buyer's choice whether to reject the goods and cause a recission of the contract, suing for their purchase price, or whether to accept the goods and receive as damages for breach of warranty the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted".
Affirmed.
NOTES
[1] The seller admitted that because of the GIA certificate it bargained for and got an increased price for the diamond.