SLYMAN, APPELLANT, *v.* PICKWICK FARMS ET AL., APPELLEES.

(No. 83AP-92—Decided March 29, 1984.)

*Mr. Max Kravitz*, for appellant.

*Messrs. Crabbe, Brown, Jones, Potts & Schmidt, Mr. Kenneth E. Harris, Messrs. Spurlock, Sears, Pry & Griebling* and *Mr. Robert B. Spurlock*, for appellees.

STRAUSBAUGH, J. This is an appeal by plaintiff, David Slyman, from a judgment of the Franklin County Court of Common Pleas directing a verdict in favor of defendants, Pickwick Farms and Robert F. Knappenberger, D.V.M.

The record reveals that, on October 16, 1979, plaintiff attended the Scioto-Tattersalls and Ohio Harness Horse Breeders, Inc., yearling sale at Scioto Downs in Franklin County. At the sale, plaintiff purchased five horses, all consigned by Pickwick Farms. One of the horses, a yearling colt named Masterpoint, was purchased for the sum of $4,200. Before bids were accepted on the colt, a statement concerning the horse's condition was read over the public address system. The statement, dated October 12, 1979, was prepared by Dr. Knappenberger, a veterinarian from Bucyrus, Ohio, at the request of Pickwick Farms and read as follows:

"This animal at very rare intervals will make a slight noise on expiration of air — This is due to the so-called false nasal folds being very slightly more softer than normal — The true nasal openings and nasal cavities are normal in size and in no way is the animal's breathing affected —"

A copy of the statement was later given to the plaintiff after the sale was completed.

The conditions of each sale conducted at the auction were specifically set out in the catalog for the Tattersalls horse sales. Condition #7 states, in pertinent part, as follows:

"WARRANTIES, SOUNDNESS. Unless otherwise expressly announced at time of sale there is no guarantee of any kind as to the soundness or condition or other quality of any horse sold in this sale * * *."

After the auction, the horse was then transported to Painesville, Ohio for training. A few days later, the trainer, William Smith, notified plaintiff that the horse was having difficulty breathing and that its training would have to be discontinued. Plaintiff notified Pickwick Farms, by letter, of the problem and requested that his purchase money be returned to him along with expenses. On February 14, 1980, plaintiff had the horse examined by Dr. Catherine Kohn, a doctor and associate professor of Equine Medicine and Surgery at the Ohio State University. After examining the horse, Dr. Kohn concluded that the horse's breathing problem stemmed from a bilateral narrowing of the ventral meatus through which most of the air passes during respiration and, as a result, the horse probably would not be able to race successfully in his present condition.

On July 29, 1980, plaintiff filed a complaint against Pickwick Farms, Robert F. Knappenberger, D.V.M., Scioto-Tattersalls of Lexington, Kentucky, and Ohio Harness Horse Breeders, Inc., of Columbus, for breach of warranty, requesting that his sales contract be rescinded and that compensatory and punitive damages be awarded to plaintiff along with attorney's fees, interest and costs. Trial was commenced against the defendants, Pickwick Farms and Knappenberger, on November 29, 1980 and, at the end of plaintiff's case, defendants moved for a directed verdict upon the grounds that no express warranty had been created by Knappenberger's statement and that, even if there was a warranty, there was no evidence presented of a breach. The trial court sustained the defendants' motion, finding that the statement signed by Dr. Knappenberger was merely an opinion

and did not constitute an express warranty. In addition, the court concluded that even if a warranty was created by Knappenberger's statement, there was no evidence presented at the trial upon which reasonable minds could conclude other than that there was no breach of the alleged warranty. In a *nunc pro tunc* order issued by the court on March 2, 1984, defendants Scioto-Tattersalls and Ohio Harness Horse Breeders, Inc., were dismissed as defendants.

In his appeal, plaintiff raises the following two assignments of error:

"1. The trial court erred when it sustained defendant-appellee's [sic] motion for a directed verdict on the basis that there was no express warranty created at the time of the sale of the horse, Masterpoint.

"2. The trial court erred when it sustained defendant-appellee's [sic] motion for a directed verdict on the basis that there was no breach of warranty reagarding [sic] the sale of the horse, Masterpoint."

Plaintiff asserts that Knappenberger's statement as announced at the auction created an express warranty as to the condition of the horse at the time of the sale and that the defendants were in breach of that warranty when they delivered the horse with a breathing problem that prevented the horse from racing.

Under R.C. 1302.26 (U.C.C. Section 2-313), express warranties by the seller may be created by:

"(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(2) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(3) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."

The trial court's decision rests largely on the language of R.C. 1302.26(B), which states:

"It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but *an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."* (Emphasis added.)

Since a written copy of Knappenberger's report was submitted into evidence by the plaintiff and since there is no dispute that the statement was read aloud at the time of the sale, no question of fact exists as to its content. The main issue of this case centers around whether or not Knappenberger's description of the horse's breathing condition as a matter of law gave rise to an express warranty.

No proof of the intentions of the seller to create a warranty is needed under R.C. 1302.26, nor is it necessary that formal words, such as "warrant" or "guarantee," be used in communicating the warranty. Any affirmation by the seller, which forms a part of the "basis of the bargain," may constitute an express warranty. As set forth in the comments that accompany R.C. 1302.26, it is the purpose of the law of warranty to determine what it is that the seller has in essence agreed to sell. "* * * [A] contract is normally a contract for the sale of something describable and described." Official Comment 4, R.C. 1302.26. Thus, if a description is given by the seller of the particular goods to be sold and that description is included in the negotiations for its sale, it may reasonably be concluded that the description will form a part of the "basis of

the bargain." In the instant case, the trial court concluded that the statement read over the loud speaker before the sale of Masterpoint was not an affirmation of fact or description of the horse, but, rather, the opinion of a professional veterinarian and, therefore, did not create an express warranty.

It has been recognized in Ohio that a statement by the seller concerning the physical capabilities of a race horse may give rise to an express warranty. In the case of *Kuhn* v. *Campbell* (1928), 118 Ohio St. 392, the Supreme Court concluded that a statement appearing in a sales catalog at the Chicago Horse Auction constituted an express warranty: "* * * He is a beautiful type little gelding, and an exceptionally good gaited trotter. He has never had much training, but can trot a 2:15 gait, and do it right, and with little training there is no reason why he should not make quite a trotter * * *." The statement was received not as a representation of his past performance, but a guarantee that the horse could trot a 2:15 gait at the time of the sale. Other states have also recognized that an express warranty may be created by the seller, as to the physical condition of a horse, through statements solicited at an auction. For instance, in *McKnight* v. *Bellamy* (1970), 248 Ark. 27, 449 S.W. 2d 706, the Arkansas Supreme Court held that representations set forth in the catalog at an auction which stated that a certain mare had been "bred" conveyed a reasonable assumption that the mare was pregnant or in foal, and, thus, created an express warranty as to the condition of the horse at the time of the sale. See, also, *Arine* v. *McAmis* (Okla. 1979), 603 P. 2d 1130.

Of course, whether or not the statement made represents merely the seller's "puffing" or his opinion and did not form a part of the basis of the bargain between the parties requires that the court consider the cir-

cumstances surrounding the sale, the reasonableness of the buyer in believing the seller, and the reliance placed on the seller's statement by the buyer. *Centennial Ins. Co.* v. *Tanny Int'l.* (1975), 46 Ohio App. 2d 137. See, also, *Price Bros. Co.* v. *Philadelphia Gear Corp.* (C.A. 6, 1981), 649 F. 2d 416, certiorari denied (1981), 454 U.S. 1099 (applying Ohio law). Here, there is no indication in the record that the plaintiff was equal to or superior in his knowledge of the physical condition of Masterpoint and his respiratory problem than was Knappenberger; nor does the evidence show that he could be expected to have an opinion on the breathing habits of a yearling standard-bred merely from a personal inspection of the horse. However, the record does tend to show that plaintiff did expect to train and run Masterpoint as a standard-bred race horse and, as such, could reasonably have relied upon Knappenberger's statement to indicate that the horse was physically capable of racing. Knappenberger's statements specifically described Masterpoint's respiratory condition and affirmatively stated that "the true nasal openings and nasal cavities are normal in size and in no way is the animal's breathing affected." It could reasonably be concluded that the main purpose behind having this statement read aloud before the sale was to relieve any apprehension or suspicions that might arise as a result of the peculiar sound Masterpoint would occasionally make while breathing, and to convince all those interested in purchasing the horse that it does not have any serious respiratory problems that would affect its racing ability. Thus, Knappenberger's statement was more than just mere opinion or "puffing"; rather, it was a description of Masterpoint's respiratory condition, which, under the circumstances, became a part of the basis of the bargain.

As far as the origin of the statement

is concerned, regardless of the fact that the description was formulated by a third party, and not by the seller, the statement may still be found to be part of the basis of the bargain and, therefore, constitutes an express warranty. Nothing in R.C. 1302.26 (U.C.C. 2-313) requires that the description be made by the seller in order to create an express warranty. "[T]he seller need only introduce it into the bargaining process so that it becomes part of the basis of the bargain." *Autzen* v. *John C. Taylor Lumber Sales, Inc.* (1977), 280 Ore. 783, 788-789, 572 P. 2d 1322, 1325. While the decision in *Autzen* is not binding on this court, it is certainly persuasive in its analysis of express warranties originating from a statement of a third party. In *Autzen,* the purchaser of a used boat brought an action for breach of warranty against the seller. During the sales negotiations, the seller, through his agent, submitted a report to the buyer from an independent surveyor on the condition of the boat. The report stated that "* * * the hull appears to be very sound and cruiser should be well suited for its intended purpose." *Id.* at 1325. Later, after the sale, the buyer discovered that the boat had extensive dry rot and insect infestation and would require substantial repairs. The Supreme Court of Oregon affirmed a judgment in favor of the buyer, holding that so long as it was the seller who introduced the description into the negotiations, it was of no significance that he did not author the report.

In another similar case from the Third District Court of Appeals for Florida, *Carter Hawley Hale Stores, Inc.* v. *Conley* (Fla. App. 1979), 372 So. 2d 965, the plaintiff, Conley, purchased a ten carat diamond and ring setting from the defendant for $120,000. Accompanying the diamond was a report from GIA in New York describing the clarity and quality of the stone. Later, the plaintiff discovered that the diamond was not of the quality previously described by GIA but, instead, was of a lesser quality and, thus, had a significantly lower value. On appeal from a verdict rendered in favor of the plaintiff, the defendant contended that under U.C.C. Sec. 2-313(2), an express warranty had not been created since the report was merely the opinion of a third party and not an affirmation of fact. The court, however, pointed out that U.C.C. Sec. 2-313(2) mentions only those statements purporting to be merely the "seller's opinion" and that opinions of third parties are not excluded. The court, however, went on to indicate that the report was more than just a mere opinion; it was an affirmation which in objective judgment became part of the basis of the bargain.

As in the *Autzen* and *Conley* cases, the major factor to be considered when dealing with a statement originating from a third party is whether or not the description or statement in question became a part of the basis of the bargain. The origin of the statement is not important so long as it is the seller who introduces it into the bargaining process. In the instant case, Knappenberger examined Masterpoint on October 12, 1979 and prepared his evaluation of the horse at the request of Pickwick Farms. It was Pickwick who introduced the statement into the bargaining process by having it read aloud before the sale of the horse. As such, the description given by Knappenberger concerning the horse's respiratory condition at the time of the sale constituted an express warranty.

As for condition #7 in the sales catalog, the language found therein did not preclude any consideration of Knappenberger's report at the time of the sale or alter its effects as a warranty. The fact that the statement when announced was not specifically called a "warranty" or "guarantee" did not violate the restrictions in condition #7. All that was necessary for a warranty or

guarantee concerning the condition of a horse to be effective was that it be announced at the time of the sale. No requirements as to its form or content are mentioned. Therefore, the plaintiff's first assignment of error is sustained.

In his second assignment of error, plaintiff contends that the trial court erred in granting the defendants a directed verdict on the grounds that there was no evidence presented upon which it could reasonably be found that there was a breach of warranty in regard to the sale of Masterpoint. The trial court's decision appears in the transcript of the trial and reads, in pertinent part, as follows:

"While it may be necessary of the ruling in light of that decision to proceed further, the court is of the opinion further that if it were taken as a warranty, the evidence here is not sufficient to show a breach of the warranty since it would require evidence to show that what the practice was in veterinarian medicine with regard to these matters and that indeed, the opinion of this case did not match the standards of professional attention and expertise that is required. And in this case, we have the doctor's own statement on what he did and what he found, and the counter witness for the plaintiff saying that she is in no position to challenge his opinion or say what he found at the time of his examination, which included, we might add, a matter of recollection of the evidence, the normal examination of the nose of this horse, including the passage of a three quarter inch tube through the nasal passages, the nostrils, and that no obstruction was encountered; and further, that the professional expression of his opinion in that case also made a test of the horse's performance and characteristics after periods of exercise and found nothing there that would lead to the belief or opinion that there was something wrong with the horse's capability or ability to breathe."

When considering a motion for a directed verdict, evidence is to be construed most strongly in favor of the party against whom the motion is directed and, if based upon that evidence, it is determined that reasonable minds could come to but one conclusion and that conclusion is against the party against whom the motion is brought, only then can the motion be granted. *Strother* v. *Hutchinson* (1981), 67 Ohio St. 2d 282 [21 O.O.3d 177]. As an express warranty, the statement from Knappenberger warrants that, at the time of the sale, Masterpoint's breathing was normal and unobstructed. In its decision, the trial court emphasized the fact that in order to establish a breach plaintiff would have to present expert testimony showing that Knappenberger's examination of the horse and description of its breathing condition did not match the standards of professional expertise that are required in the practice of veterinary medicine. However, whether or not Knappenberger committed malpractice when he arrived at his conclusions as to the horse's condition is not the determining factor. It is the condition of the horse on the day of the sale (October 16, 1979), and to what degree it may have varied from Knappenberger's description that is the key.

Plaintiff presented evidence from William Smith, a professional horse trainer, that one week after the sale he was unable to continue training the horse because of a serious breathing problem. Dr. Catherine Kohn also testified for the plaintiff and stated that, after examining the horse on February 14, 1980, she found that the horse suffered from an anatomical abnormality that produced a functional disturbance in the horse's breathing and would cause a problem with the horse's future performance. After reviewing this evidence in a light most favorable to the plaintiff, we find that reasonable minds could differ as to whether or not a breach of war-

ranty was committed in the sale of Masterpoint, and the question should have been submitted to the jury for consideration.

Therefore, plaintiff's second assignment of error is sustained as to defendant Pickwick Farms.

However, in regard to defendant Dr. Knappenberger, since the plaintiff failed to present any evidence identifying him as one of the parties to the sale or demonstrating that he had deliberately misrepresented the horse's condition, the trial court did not err in granting a directed verdict in his favor. Accordingly, the plaintiff's second assignment of error is sustained in part, and overruled in part, and the judgment of the trial court is sustained in part and reversed in part and remanded for further consideration consistent with law as set forth in this opinion.

*Judgment sustained in part, reversed in part, and cause remanded.*

McCORMAC, P.J., and KEEFE, J., concur.

KEEFE, J., of the First Appellate District, sitting by assignment in the Tenth Appellate District.