[Cite as *Volovetz v. Tremco Barrier Solutions, Inc.*, 2016-Ohio-7707.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Boris Volovetz et al., | : | |
| Plaintiffs-Appellants, | : | |
| | : | No. 15AP-1056 |
| v. | : | (C.P.C. No. 14CV-6750) |
| Tremco Barrier Solutions, Inc. et al., | : | (ACCELERATED CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 10, 2016

**On brief:** *Gillett Law Office, LLC*, and *Gary A. Gillett*, for appellants. **Argued:** *Gary A. Gillett.*

**On brief:** *Zeiger, Tigges & Little LLP, Matthew S. Zeiger*, and *Zachary M. Sugarman*, for appellee Tremco Barrier Solutions, Inc. **Argued:** *Matthew S. Zeiger.*

**On brief:** *Lane Alton, Joseph A. Gerling* and *Eric S. Bravo*, for appellee North Central Insulation, Inc. **Argued:** *Eric S. Bravo.*

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiffs-appellants, Boris and Inna Volovetz, appeal judgments of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Tremco Barrier Solutions, Inc. ("Tremco") and North Central Insulation, Inc. ("NCI"). For the following reasons, we affirm in part and reverse in part the judgment granting Tremco summary judgment, and we reverse the judgment granting NCI summary judgment.

{¶ 2}   The Volovetzes own a house located at 6883 Jersey Drive in New Albany, Ohio.  During construction of the house, Boris Volovetz acted as the general contractor.

{¶ 3}   Volovetz contracted with NCI to insulate the Jersey Drive house.  Michael White, a salesperson with NCI, proposed that NCI also waterproof the house's basement. Volovetz and White then discussed terms for the purchase of a Tuff-N-Dri basement waterproofing system and installation of that system around the exterior of the house's foundation.  The Tuff-N-Dri basement waterproofing system, which is sold by Tremco, consists of two components:  a spray-on polymer modified asphalt emulsion called Tuff-N-Dri and fiberglass foundation boards called Warm-N-Dri.  Installation of the Tuff-N-Dri system entails applying the Tuff-N-Dri asphalt emulsion to the foundation walls to create a waterproof membrane and placing the Warm-N-Dri boards over the membrane.

{¶ 4}   During the initial negotiations between Volovetz and White, Volovetz requested a 50-year warranty on the Tuff-N-Dri system.  White informed Volovetz that the manufacturer only offered a 30-year warranty.  White assured Volovetz that a 30-year warranty provided him with sufficient protection because "if you have any issues it will occur in the first couple of years."  (Ex. 38, Volovetz Dep.)  Volovetz then acceded to a 30-year warranty.

{¶ 5}   On May 10, 2013, White sent Volovetz an email with two PDF files attached. The first attachment was entitled "6883 jersey dr.pdf" and the second "WP NOTICE – v05-08-12.pdf."  (Ex. 6, Volovetz Dep.)  The body of the email stated, "Boris[:] Here is you[r] quote and a summary of the waterproofing[.]  I need you to sign both and send back[.]"  *Id.*  The PDF file entitled "6883 jersey dr.pdf" contained a pre-printed NCI quote form that White had completed with the terms for waterproofing the basement of the Jersey Drive house.  The quote provided:

> NCI will WATERPROOF THE FOUNDATION of this home by installing Tuff-[N]-Dri Asphalt-based Spray-on Membrane along with 1 3/16" Ri[d]gid Fiberglas[s] Board on the first 12 courses[.]
> NCI will spray the top two courses only[.]
> This will rate an R-factor of 5 and has a 30-year warrantee.
> Prior to this being installed, all drains should be completed before backfilling and the grade line marked with ample visibility.
> Parge[t]ing is not required for this application.
> TOTAL $2905.00

*Id.*

{¶ 6} The PDF file entitled "WP NOTICE – v05-08-12.pdf" comprised five pages. The first page stated:

> **WATERPROOFING INSTRUCTIONS AND NOTICES.**
>
> Dear Valued Customer,
> We thank you for making NCI your waterproofing contractor of choice. In order to ensure the best possible experience we ask that you read and sign below as well as initial each of the attached documents outlining:
> 1. The details of what has to be done in order to properly prepare a job for the application of the Tuff-N-Dri waterproofing system.
> 2. The details of the Tuff-N-Dri warranty.
> 3. Instructions on what needs to be done after NCI completes the application in order to protect the waterproofing installation from damage.

*Id.* The next four pages of the PDF file contained the documents described. The second document was entitled "Tuff-N-Dri® Basement Waterproofing Systems 30-YEAR LIMITED WARRANTY" (hereinafter referred to as the "Limited Warranty"). The Limited Warranty stated that it was from Tremco, and it provided:

> What Is Covered:
>
> * * *
>
> Under normal use and service, the vertical surface of your foundation wall not obscured or covered by other building materials should be free from water leakage or seepage through the areas that are treated with TUFF-N-DRI Basement Waterproof System product ("Leakage"), EXCEPT FOR EXCEPTIONS, EXCLUSIONS AND LIMITATIONS SET FORTH BELOW.
>
> What We Will do If the Product Fails:
>
> If the TUFF-N-DRI Basement Waterproofing System fails, we will either repair or have repaired the area in question or provide replacement of the TUFF-N-DRI Basement Waterproofing System as your remedy * * *. We will exercise our judgment and shall have the sole option to select the best method by which to remedy leakage, whether by interior or exterior solution. We will undertake the cost of providing any replacement of the TUFF-N-DRI Basement Waterproofing

System necessary, and pay for labor costs necessary to reapply or patch the TUFF-N-DRI Basement Waterproofing System within a reasonable time. Our total responsibility during the life of this Warranty shall not exceed an amount equal to $3.00 per square foot of foundation wall treated with the TUFF-N-DRI Basement Waterproofing System and requiring repair, or a total of $10,000, whichever is lower.

*Id.*

{¶ 7} After receiving the email from White, Volovetz reviewed the first attachment and determined that the price quoted was higher than the price offered by another contractor with whom Volovetz was negotiating. Volovetz contacted White and told him so. White responded with a second email, also dated May 10, 2013. Like the first email, the second email attached two PDF files. The first PDF file—"6883 JERSEY DR REPRICED.pdf"—contained a revised quote. (Ex. 7, Volovetz Dep.) The revised quote was identical in form to the initial quote, except that the total was listed as $2,815, not $2,905. The second PDF file—"WP NOTICE – v05-08-12.pdf"—contained the exact same content as the file of that name attached to the first email. *Id.* The body of the second email stated, "Boris[:] This is the best price....please sign both....thanks." *Id.*

{¶ 8} While Volovetz primarily focused his attention on the quotes attached to the two emails, Volovetz also opened the PDF file entitled "WP NOTICE – v05-08-12." However, the first few pages in the file "ma[d]e no sense" to Volovetz. (Volovetz Dep. at 65.) Volovetz stopped his review of the file and contacted White to ask for an in-person meeting. Volovetz requested that White bring to the meeting "whatever he want[ed] [Volovetz] to sign so [they could] both review it." *Id.* at 141. When White appeared for the meeting, he had with him only the revised quote. White and Volovetz reviewed the terms of the revised quote, Volovetz made handwritten additions, and then Volovetz signed the revised quote.

{¶ 9} Volovetz never signed or initialed the documents contained in the PDF file entitled "WP NOTICE – v05-08-12." Volovetz never saw or read the Limited Warranty prior to contracting with NCI.

{¶ 10} NCI installed the Tuff-N-Dri basement waterproofing system during May and June 2013. Unfortunately, the Tuff-N-Dri system did not keep the Volovetzes' basement waterproof. In November 2013 and May 2014, Volovetz observed water leaking

through the foundation walls. Volovetz contacted NCI and informed it that the Tuff-N-Dri system had failed. In May 2014, after Volovetz learned from NCI that it had purchased the Tuff-N-Dri system from Tremco, Volovetz also contacted Tremco to inform it of the system's failure. In response, Tremco offered to apply two coats of Zinsser WaterTite paint to the interior of the foundation walls. Volovetz rejected that remedy.

{¶ 11} On June 30, 2014, the Volovetzes filed suit against NCI and Tremco. The Volovetzes asserted claims against NCI for breach of express warranty, breach of the implied duty to perform in a workmanlike manner, and breach of the implied warranties of merchantability and fitness for a particular purpose. The Volovetzes asserted claims against Tremco for breach of the implied warranty that a product is free of defects and negligence in how Tremco instructed NCI regarding the installation of the Tuff-N-Dri system. The Volovetzes maintained that NCI and Tremco were liable in the amount needed to excavate the foundation; remove the excavated materials; remove the Tuff-N-Dri system; repair the foundation; apply a new exterior waterproofing system; backfill the foundation with gravel and dirt; replace paving, concrete, drain tiles, and landscaping damaged by the excavation; remove and reinstall the electrical panels and low-voltage systems; and treat the inner foundation walls for mold.

{¶ 12} NCI and Tremco each answered the complaint. In addition to answering, Tremco also filed a counterclaim seeking a declaratory judgment that: (1) the Limited Warranty governed and defined Tremco's obligation with respect to the Volovetzes and their Tuff-N-Dri basement waterproofing system, (2) Tremco acted consistent with and fully complied with its obligation under the Limited Warranty, and (3) the Volovetzes could not circumvent the remedies provided in the Limited Warranty by recasting their warranty claims as non-warranty claims.[1]

{¶ 13} After conducting discovery, Tremco moved for summary judgment on its claim for declaratory judgment and the Volovetzes' claims against it. In relevant part, Tremco argued that the Volovetzes were bound by the limitations contained in the Limited Warranty because that warranty was expressly incorporated into the contract that Volovetz and NCI executed. Pursuant to the Limited Warranty, Tremco had the sole

---

[1] In this decision, we only recount the procedural history relevant to this appeal. We recognize that this action included additional claims and parties, but we do not detail them here.

option to select the remedy for the failure of the Tuff-N-Dri basement waterproofing system. Tremco determined that the best remedy for the leakage was coating the basement walls with a waterproofing paint. Thus, Tremco contended that the Limited Warranty barred the Volovetzes from demanding any other remedy.[2] In the alternative, Tremco argued that the Ohio Product Liability Act ("OPLA"), R.C. 2307.71 et seq., precluded the Volovetzes from pursuing their claims against Tremco.

{¶ 14} In response to Tremco's motion, the Volovetzes conceded that summary judgment was proper on their implied warranty claim, but not on their negligence claim. The Volovetzes argued that the remedy limitation contained in the Limited Warranty should not apply to them because Volovetz did not know about it when he signed the contract with NCI. With regard to Tremco's OPLA argument, the Volovetzes maintained that the OPLA did not preclude their negligence claim because they only sought economic damages for Tremco's negligence.

{¶ 15} The trial court granted Tremco summary judgment on the basis that the Limited Warranty exclusively governed the relationship between the Volovetzes and Tremco. Without any analysis, the trial court concluded that the Limited Warranty was specifically referenced and incorporated into the contract between Volovetz and NCI. The trial court then held that the remedy limitation in the Limited Warranty applied, despite Volovetz's ignorance of its existence, based on the legal maxim that a party is held to the terms of a contract that he signs regardless of whether he reads it. The trial court reasoned that, because the Volovetzes were bound by the remedy limitation, they could not recover for negligence. The trial court did not address Tremco's OPLA argument.

{¶ 16} Confusingly, even though the trial court had granted Tremco's motion for summary judgment in its entirety, the trial court retained Tremco as a party so the Volovetzes could recover from it to the extent the Limited Warranty allowed. In a later entry clarifying its initial ruling, the trial court recognized that it could not retain Tremco as a party when it had granted summary judgment on the claim Tremco had asserted, as

---

[2] In making this argument, Tremco did not explain why a limitation on the remedies recoverable for a breach of an express warranty would legally preclude the Volovetzes from suing Tremco for negligence. Thus, two questions remain unanswered: (1) why a defense to a breach-of-express-warranty claim would apply to a negligence claim, and (2) why a remedy limitation would preclude plaintiffs from asserting a claim. As the Volovetzes raised neither of these questions in response to summary judgment, we do not endeavor to answer them in this decision.

well as the claims the Volovetzes had asserted against Tremco. The trial court thus dismissed Tremco from the action.

{¶ 17} The Volovetzes moved for reconsideration of the summary judgment ruling. In relevant part, the Volovetzes argued that, contrary to the trial court's assertion, the contract with NCI did not incorporate by reference the terms contained in the Limited Warranty. Thus, argued the Volovetzes, they never agreed to the remedy limitation in the Limited Warranty, and consequently, that limitation could not bar their negligence claim against Tremco. The trial court rejected this argument and denied the motion for reconsideration.

{¶ 18} The day after the trial court denied the Volovetzes' motion for reconsideration, NCI moved for summary judgment. NCI argued that the Limited Warranty also exclusively governed its relationship with the Volovetzes. NCI then contended that the Limited Warranty precluded the Volovetzes from asserting any of the claims they had pled against NCI. In a decision and entry dated October 27, 2015, the trial court accepted this argument and granted NCI summary judgment.[3]

{¶ 19} The Volovetzes now appeal the trial court's decisions granting Tremco and NCI summary judgment, and they assign the following errors:

> [1.] The Trial Court erred in granting Summary Judgment to [Tremco] and NCI on grounds that the Appellants are contractually bound by the Thirty[-]Year Limited Warranty when the quote which is the basis of the contract did not incorporate the Thirty[-]Year Limited Warranty by reference.
>
> [2.] The Trial Court erred in granting Summary Judgment to [Tremco] and NCI as there are material issues of fact in dispute which preclude Summary Judgment as to both parties.

{¶ 20} Both of the Volovetzes' assignments of error challenge the trial court's rulings on summary judgment. A trial court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor

---

[3] Neither the trial court nor NCI explains why or how a remedy limitation in an express warranty issued by Tremco would preclude the Volovetzes from asserting claims against NCI. However, as the Volovetzes did not raise that issue in response to NCI's motion for summary judgment, we do not address it.

of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 21} By their first assignment of error, the Volovetzes argue that they are not bound by the remedy limitation contained in the Limited Warranty because the contract with NCI does not incorporate the Limited Warranty by reference. We agree.

{¶ 22} "Any affirmation by the seller, which forms a part of the 'basis of the bargain,' may constitute an express warranty." *Slyman v. Pickwick Farms*, 15 Ohio App.3d 25, 27 (10th Dist.1984), quoting R.C. 1302.26(A)(1). A seller's breach of an express warranty can give rise to the buyer's right to recover incidental and consequential damages. *Sutphen Towers, Inc. v. PPG Industries, Inc.*, 10th Dist. No. 05AP-109, 2005-Ohio-6207, ¶ 60, citing R.C. 1302.88. Such damages include, but are not limited to, any reasonable expense incident to the breach and injury to property proximately resulting from the breach. R.C. 1302.89(A) and (B)(2).

{¶ 23} However, "[r]emedies for breach of warranty can be limited in accordance with the provisions of * * * [R.C.] 1302.93 * * * on contractual modification of remedy." R.C. 1302.29(D). Pursuant to R.C. 1302.93(A)(1), "[t]he agreement * * * may limit or alter the measure of damages recoverable * * *, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts." This provision gives the parties to a contract of sale the right to include any reasonable provision with respect to what remedies are available upon breach. 4B Lawrence, *Anderson on the Uniform Commercial Code*, Section 2-719:4, at 8 (3d Ed. 2001). Thus, parties to a contract of sale may consensually allocate the loss resulting from the failure of the goods to perform as warranted, as long as minimum adequate remedies remain available for a beach. *Id.*

{¶ 24} Notably, " '[t]he limitation [or exclusion of remedies] must be a part of the parties' bargain in fact.' " *Insurance Co. of N. Am. v. Automatic Sprinkler Corp.*, 67 Ohio St.2d 91, 96 (1981), quoting Nordstrom, *Law of Sales*, Section 89, at 276 (1970); *accord Sanco, Inc. v. Ford Motor Co.*, 771 F.2d 1081, 1086 (7th Cir.1985) (holding that "a seller may not 'spring' a warranty disclaimer on a customer after a sale has been consummated. The parties must have understood that the warranty, and any disclaimers or limitations, were part of their deal."); *Haithcock v. Graham Ford, Inc.*, 10th Dist. No. 81AP-935 (Dec. 30, 1982) (holding that " '[a] limitation of warranties to be effective must have been bargained for' "). Inclusion of a remedy limitation in the parties' agreement is essential because "[a] limitation of remedy is binding only because it is a term of the contract between the parties." Lawrence, Section 2-719:16, at 14; *accord Olathe Mfg., Inc. v. Browning Mfg.*, 259 Kan. 735, 755 (1996) (holding that a manufacturer's "remedy limitation [was] not directly applicable to [the buyer] because it was not part of the basis of the bargain"); *Duffin v. Idaho Crop Improvement Assn.*, 126 Idaho 1002, 1012 (1995) ("[A] remedy limitation is effective only as a term of the parties' agreement."); 1 *American Law of Warranties*, Section 7:18, at 566 ("A disclaimer or limitation that is not part of the contract of the parties is not binding on the buyer.").

{¶ 25} Here, in order for NCI and Tremco to rely on the remedy limitation in the Limited Warranty, the bargain between NCI and the Volovetzes must include the Limited Warranty. All parties acknowledge that the contract at issue is the one-page, pre-printed quote form completed by White and signed by both White (on behalf of NCI) and Volovetz. The Limited Warranty is a separate document. To overcome the separate nature of the contract and the Limited Warranty, NCI and Tremco point to the term in the contract that the Tuff-N-Dri waterproofing system "has a 30-year warrantee." Tremco and NCI argue that this contractual term refers to the Limited Warranty and that the reference is sufficient to incorporate the Limited Warranty into the contract.

{¶ 26} Ohio contract law includes the doctrine of incorporation by reference. *See Mohmed v. Certified Oil Corp.*, 8th Dist. No. 102049, 2015-Ohio-2398, ¶ 35; *KeyBank Natl. Assn. v. Columbus Campus, LLC*, 10th Dist. No. 11AP-920, 2013-Ohio-1243, ¶ 21; *Blanchard Valley Farmers Coop., Inc. v. Carl Niese & Sons Farms, Inc.*, 143 Ohio App.3d 795, 802 (3d Dist.2001). Under that doctrine, when a document is incorporated into a

contract by reference, that document becomes part of the contract. *KeyBank Natl. Assn.* at ¶ 21; *Blanchard Valley Farmers Coop., Inc.* at 802. Ohio law, however, does not set forth any standard for determining when a contract incorporates another document by reference. To articulate that standard, we turn to out-of-state precedent.

{¶ 27} Generally, "the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document, including * * * a separate document which is unsigned[,]" if "the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt." 11 Lord, *Williston on Contracts*, Section 30:25, at 294-301 (4th Ed.2012); *accord Rinard v. E. Co.*, 978 F.2d 265, 269 (6th Cir.1992), fn. 4 ("For the terms of another document to be incorporated by reference into the document executed by the parties, *the reference must be clear and unequivocal * * *.*") (Emphasis sic.); *Ingersoll-Rand Co. v. El Dorado Chem. Co.*, 373 Ark. 226, 233 (2008) (holding that "a majority of states have concluded" that in order for a contract to incorporate another document "the contract must clearly and specifically reference the document to be incorporated"). Moreover, mere reference to another document is not sufficient to incorporate that document into a contract; the contract language must also clearly demonstrate that the parties intended to incorporate all or part of the referenced document. *Pennaco Energy, Inc. v. KD Co., LCC*, 2015 WY 152, 363 P.3d 18, ¶ 79; *Woodruff v. Thames*, 143 So.3d 546, 555 (Miss.2014); *NSTAR Elec. Co. v. Dept. of Pub. Util.*, 462 Mass. 381, 394 (2012); *accord Microsoft Corp. v. Big Boy Distrib. LLC*, 589 F.Supp.2d 1308, 1319 (S.D.Fla.2008) ("A document may be incorporated by reference in a contract if the contract specifically describes the document and expresses the parties' intent to be bound by its terms."); *Hous. Auth. v. Snyder*, 2002 UT 28, 44 P.3d 724, ¶ 19 (holding that the contract's reference to another document " 'must be clear and unequivocal,' and alert the non-drafting party that terms from another document are being incorporated"). In other words:

> the language used in a contract to incorporate extrinsic material by reference must explicitly, or at least precisely, identify the written material begin incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract * * *.

*Northrup Grumman Information Technology, Inc. v. United States*, 535 F.3d 1339, 1345 (Fed.Cir.2008). Whether a contract has incorporated another document by reference presents a question of law for a court to determine. Lord, Section 30:25, at 308.

{¶ 28} In the case at bar, the contract states that the Tuff-N-Dri basement waterproofing system "has a 30-year warrantee." We agree with Tremco and NCI that this provision could refer to the Limited Warranty. However, the contractual language does not attain the clarity and specificity necessary to incorporate the Limited Warranty by reference. As we stated above, "[a]ny affirmation by the seller, which forms a part of the 'basis of the bargain,' may constitute an express warranty." *Slyman*, 15 Ohio App.3d 25, at 27. The basis of the bargain at hand was the payment of money in exchange for the sale and installation of a product to stop water from infiltrating the foundation walls of the Volovetzes' house. In the contract, NCI affirmed that the Tuff-N-Dri basement waterproofing system would waterproof the foundation. Thus, the promise of a "30-year warrantee" can be read as a complete, independent contractual term that extends an express warranty that the Tuff-N-Dri system would waterproof the foundation for 30 years. Interpreted as a self-contained promise, the term providing a "30-year warrantee" does not refer to another document or indicate an intent to incorporate another document into the contract. Because incorporation by reference cannot occur without a clear identification of the extrinsic document and a clearly expressed purpose to incorporate that document, we conclude that this contract's equivocal language does not incorporate the Limited Warranty by reference.

{¶ 29} As incorporation by reference did not occur here, the terms of the Limited Warranty, including the remedy limitation, do not bind the Volovetzes. Without a remedy limitation contractually binding the Volovetzes, the trial court's reasoning for granting summary judgment fails. Accordingly, we sustain the first assignment of error.

{¶ 30} By their second assignment of error, the Volovetzes argue that the trial court erred in granting summary judgment because genuine issues of material fact remain in dispute regarding Volovetz's knowledge about the Limited Warranty prior to contracting with NCI. Given our ruling on the first assignment of error, the second assignment of error is moot. Consequently, we do not address it.

{¶ 31} Based on our ruling on the first assignment of error, we conclude that the trial court erred in granting summary judgment to NCI. With regard to Tremco, however, our analysis is not over. Tremco asserted below, and, now, raises on appeal, an additional, alternative ground for summary judgment; namely, that the OPLA preempts all common-law product liability claims, and thus, the Volovetzes' claim for negligence must fail. We agree with Tremco.

{¶ 32} The OPLA "abrogate[s] all common law product liability claims or causes of action." R.C. 2307.71(B). A "product liability claim" is a claim or cause of action that:

> seeks to recover compensatory damages from a manufacturer or supplier for death, physical injury, emotional distress, or physical damage to property other than the product in question, that allegedly arose from any of the following:
>
> (a)   The design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product;
>
> (b)   Any warning or instruction, or lack of warning or instruction, associated with that product;
>
> (c)   Any failure of that product to conform to any relevant representation or warranty.

R.C. 2307.71(A)(13).

{¶ 33} The OPLA preemption provision extinguishes any common-law claim that, as pled, actually meets the statutory definition of a product liability claim. *Evans v. Hanger Prosthetics & Orthotics, Inc.*, 735 F.Supp.2d 785, 796 (N.D.Ohio 2010); *Miles v. Raymond Corp.*, 612 F.Supp.2d 913, 918 (N.D.Ohio 2009). The essential nature of the substantive allegations of the plaintiff's claim, not the artificial label attached to the claim, determines the claim's true nature. *Evans* at 796; *Miles* at 921.

{¶ 34} In the case at bar, the Volovetzes alleged in their complaint that Tremco negligently instructed NCI regarding how to install the Tuff-N-Dri system. This conduct is the same sort of conduct described in R.C. 2307.71(A)(13)(b), which states that a statutory product liability claim can arise from any instruction, or lack of instruction, associated with a product. Additionally, by their claim for negligence, the Volovetzes sought recovery for the damage to the foundation walls caused by the failure of the Tuff-

N-Dri system. This type of recovery constitutes "compensatory damages * * * for * * * physical damage to property other than the product in question." R.C. 2307.71(A)(13).[4] Therefore, the Volovetzes' negligence claim satisfies the criteria to constitute a statutory product liability claim. As the negligence claim is actually a statutory product liability claim, the OPLA preempts the claim and Tremco is entitled to summary judgment on it.

{¶ 35} Given the conclusions we reach above, we find that the trial court properly granted Tremco summary judgment on its negligence claim. The trial court, however, erred in granting summary judgment on: (1) Tremco's declaratory judgment action and (2) the claims against NCI for breach of express warranty, breach of the implied duty to perform in a workmanlike manner, and breach of the implied warranties of merchantability and fitness for a particular purpose. Therefore, upon remand, Tremco's declaratory judgment action and the claims against NCI will remain pending before the trial court.

{¶ 36} For the foregoing reasons, we sustain the first assignment of error, which renders the second assignment of error moot. We affirm in part and reverse in part the judgment granting Tremco summary judgment, we reverse the judgment granting NCI summary judgment, and we remand this matter for further proceedings consistent with law and this decision.

*Judgments affirmed in part, reversed in part; cause remanded.*

DORRIAN, P.J., and SADLER, J., concur.

_____

[4] We recognize that a claim for purely economic loss is not included in the statutory definition of "product liability claim," and, consequently, a plaintiff with such a claim may pursue a common-law remedy. *LaPuma v. Collinwood Concrete*, 75 Ohio St.3d 64, 66 (1996). Here, however, the Volovetzes seek damages for property other than the defective product. Such damages fall outside the definition of economic loss. *Compare* R.C. 2307.71(A)(2) (defining "economic loss" and stating that "[h]arm is not economic loss") *with* R.C. 2307.71(A)(7) (defining "harm" to include "physical damage to property other than the product in question"). Consequently, the holding of *LaPuma* does not apply to this case.