Argued and submitted November 16, 1979,
reversed and remanded January 28, 1980

# B.W. FEED CO., INC.,
## *Appellant,*
### *v.*
# GENERAL EQUIPMENT CO.,
## *Respondent.*
# (No. A 77-02-02585, CA 12200)
### 605 P2d 1205

Bert E. Joachims, Portland, argued the cause for appellant. With him on the brief was Klosterman & Joachims, Portland.

Dwayne R. Murray, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, Gillette and Roberts, Judges, and Tongue, Judge Pro Tempore.

TONGUE, J., Pro Tempore.

**TONGUE, J.,** Pro Tempore.

This is an action for damages alleged to have resulted from the breach of express and implied warranties in the sale of a truck. The trial court heard the case without a jury and found in favor of defendant. Plaintiff appeals.

The facts presented are in dispute. In such cases we must view the evidence in a light most favorable to the defendant, the prevailing party at trial. *Krause v. Eugene Dodge, Inc.,* 265 Or 486, 490, 509 P2d 1199 (1973).

Plaintiff is a corporation engaged in the business of recycling waste food products into animal feed. In the fall of 1973 plaintiff sought to expand its operations from the Portland area to include the collection of waste food products in the Seattle area. To do so plaintiff needed a truck.

Defendant's business included the building and sale of refuse and garbage trucks. As in this case, defendant would "modify" an existing truck chassis by adding the equipment necessary to accommodate the needs of a customer.

In the fall of 1973 plaintiff's executive vice president, Mr. Armstrong, and defendant's general manager, Mr. Kuhnau, began discussions which ultimately culminated in the sale of a truck by defendant to plaintiff for $6,600.[1] Plaintiff was looking for a refuse truck with front-end loader capable of hauling 5 to 7 tons of waste food products. It was agreed that defendant would secure a used single-axle truck chassis and construct a truck body and front-end loader for it.

---

[1] The truck was actually "sold" to a leasing company which, in turn, leased the truck to plaintiff. Although the parties disputed at trial whether this arrangement was a true lease, as claimed by defendant, or merely a financing arrangement, as claimed by plaintiff, that issue is not raised on this appeal and the trial court found it unnecessary to address that question, finding for the defendant on other grounds.

[287]

Plaintiff then purchased the completed truck. Defendant expressly warranted the truck body and front-end loader for 30 days.

Breach of that warranty is not an issue in this case. Rather, the dispute involves questions whether defendant made other express warranties and whether the implied warranty of merchantability and the implied warranty of fitness for a particular purpose are applicable under the facts of this case.

More specifically, the dispute involved the cargo capacity of the "modified" single-axle truck and subsequent mechanical failures to the truck chassis and front-end loader. Plaintiff claimed to have relied upon defendant's warranties, including an admittedly fraudulent weight certificate indicating a 5 to 7 ton load capacity. Defendant, on the other hand, claimed that plaintiff relied on the expertise of its own employees and was aware that the weight certificate was erroneous. Both parties offered evidence in support of their respective contentions.

Plaintiff took delivery of the truck on February 1, 1974. Several mechanical breakdowns occurred thereafter. Although the hydraulic system of the front-end loader broke down once, most of the mechanical problems involved failures in the truck chassis and drive train. Plaintiff claims that due to a series of mechanical failures, they were able to effectively use the truck only a few days; that they were forced to rent a substitute vehicle, and that the vehicle was rendered useless due to its poor mechanical condition.

Defendant offered evidence that the truck, excluding the truck body and front-end loader, was sold "as is"; that plaintiff inspected the truck and accepted it, and that plaintiff acknowledged that the value of the truck with the body and front-end loader, when delivered, was equal to the $6,600 purchase price.

The trial court entered special findings of fact and conclusions of law to the effect that plaintiff had failed

to prove its case by a preponderance of the evidence.[2] When reviewing the findings of the trial court in such a case this court is limited to determining whether such findings are supported by any substantial evidence. *Hawkins v. Teeples and Thatcher,* 267 Or 151, 157, 515 P2d 927 (1973).

Plaintiff asserts four assignments of error, contending that the trial court erred in holding:

1. That the only express warranty was a 30 day warranty on the truck body and loading system,

2. That an implied warranty will not apply in the absence of reliance by the buyer on the seller's skill and judgment,

---

[2]

"SPECIAL FINDINGS

"1. Plaintiff was and is an Oregon Corporation in good standing and succeeded to the interests of Thomas O.E. Cole, its President.

"2. Defendant was and is an Oregon corporation in good standing engaged in selling vehicles and equipment.

"3. On or about January 30, 1974, the defendant sold to Grantree Leasing Co. for the plaintiff's account, the 1965 used Ford truck in question after installing a body and loading system thereon and delivered the unit to plaintiff.

"4. Grantree Leasing Co. paid to defendant the sum of $6,600.00 for the completed unit.

"5. Plaintiff has not established, by a preponderance of the evidence, that defendant made any express warranties other than a 30-day warranty on the body and loading system.

"6. Plaintiff gave notice of breach of that warranty on March 6, 1974, after the 30-day warranty had expired.

"7. Plaintiff has not established, by a preponderance of the evidence, that it relied upon the defendant's skill and judgment in selecting the truck and equipment.

"Based upon the foregoing, the Court enters the following

"CONCLUSIONS OF LAW

"1. An implied warranty will not arise under the facts of this case unless the buyer relied upon the seller's skill and judgment.

"2. There has been a failure of proof of both express and implied warranties.

"3. Defendant is entitled to judgment and for its costs and disbursements."

[289]

3. That plaintiff failed to prove both express and implied warranties, and

4. That plaintiff was not entitled to judgment as prayed for as a matter of law.

## I. *Express Warranty*

Plaintiff contends that express warranties other than the 30 day warranty on the body and loading system were made. More specifically, plaintiff contends that defendant's manager admitted that he was advised of plaintiff's business operation, the use to which the truck was to be put, and of the requirement that the equipment be able to haul between five and seven tons of payload. In support of that contention plaintiff's brief quoted the following testimony of Mr. Kuhnau:

"Q. But during these—admittedly, these two discussions, did Mr. Armstrong indicate to you the capacity of truck that was needed for his job requirements?"

"A. Yes, he did."

"Q. And did he indicate that he *needed a truck with a payload of between five and seven tons?*"

"A. To the best of my knowledge, yes, he probably did."

"Q. Now, you knew from your experience in the industry that this type of rig that you and he were discussing had a capacity or gross weight of 28,000 pounds; is that not correct?"

"A. On a normal licensing basis, yes."

"Q. And so that would indicate the gross weight was 28,000 pounds? The light weight of that truck should not exceed 18,000, then, to afford a minimum payload of five tons; is that not correct?"

"A. Your figures are correct, yes."

"Q. And you did tell him that the truck would fill his needs?"

"A. Need of dumping the containers and transport, yes."

"Q. *And the particular requirement that it be able to carry a payload of five tons?*" (Emphasis added)

[290]

Plaintiff contends that these statements constitute express warranties within the statutory definition as provided by ORS 72.3130(1)(a).[3]

Plaintiff's brief, however, omitted Mr. Kuhnau's answer to the last and most important question, to which he replied, "No sir."

It is clear from this testimony that the "need" claimed by plaintiff was for a truck with a payload capacity of at least five tons. It is also clear, however, that Mr. Kuhnau denied telling Mr. Armstrong that the truck had such a payload capacity. Defendant also offered testimony that plaintiff had independently determined that the truck's capacity was adequate.[4]

---

[3] ORS 72.3130, relating to express warranties, provides:

"Express warranties by affirmation, promise, description, sample.

"(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."

[4] Mr. Cole, one of the two owners of B.W. Feed, testified that in negotiating for the purchase of the truck:

"I felt it would—a two axle trailer [meaning a truck with a single rear axle] would haul at least five ton of merchandise, seven, and that's all we needed in Seattle at that time."

"Q. Why did you think that?"

"A. Well, our three axle trailers hauled ten to thirteen ton so I figured that ought to at least haul five ton."

"Q. And this conclusion you came to based upon your own experience?"

"A. Yeah."

Defendant also offered other evidence that tended to prove a lack of reliance on the part of plaintiff. According to Mr. Kuhnau (defendant's general manager), he and Mr. Armstrong (plaintiff's executive vice president) discussed the weight problem.

"We talked about the fact that any single-axle front-end loader in—that's naturally made—any that I know of, in my personal experience, is practically illegal before it starts down the street in the morning empty."

When, as in this case, there exists a conflict in the evidence regarding the making of express warranties, we must defer to the trier of fact, regardless of how we might have viewed the evidence. *Autzen v. Taylor Lumber Sales, Inc.,* 280 Or 783, 790, 572 P2d 1322 (1977).

## II. *Implied Warranty*

The Uniform Commercial Code-Sales, ORS 72.1010 et seq, provides for two types of implied warranties, an implied warranty of merchantability under ORS 72.3140,[5] and an implied warranty of fitness for particular purpose under ORS 72.3150.[6]

The trial court dealt with the question of implied warranty as if a single warranty was involved and disposed of the warranty question in defendant's favor by determining that plaintiff had not established "that it relied upon the defendant's skill and judgment in selecting the truck and equipment."

Although proof of reliance is a necessary element to the existence of an implied warranty of fitness for particular purpose, it is not a prerequisite to the creation of an implied warranty of merchantability. *U. S.*

---

"Q. What did he respond to that?"

"A. He said that in their operation in Seattle it wouldn't make any difference because they didn't have to cross the scales."

[5] ORS 72.3140 provides:

"(1) Unless excluded or modified as provided in ORS 72.3160, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to the goods of that kind. * * *"

[6] ORS 72.3150 provides:

"Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is *relying* on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under ORS 72.3160 an implied warranty that the goods shall be fit for such purpose." (Emphasis added)

[292]

*Fibres, Inc. v. Proctor & Schwartz, Inc.,* 509 F2d 1043, 1046 (6th Cir 1975); *S-Creek Ranch, Inc. v. Monier & Company,* 509 P2d 777, 783 (Wyo 1973); *Robinson v. Williamsen Idaho Equipment Co.,* 94 Idaho 819, 828, 498 P2d 1292, 1301 (1972); *Hinderer v. Ryan,* 7 Wash App 434, 436-37, 499 P2d 252, 254 (1972). *See also* White and Summers, Handbook of the Law under the Uniform Commercial Code, § 9-9, p. 297 (1972).

Although plaintiff's complaint does not clearly allege the existence and breach of an implied warranty of merchantability, count two of that complaint can be construed to have pleaded such a warranty. Indeed, both parties in this case made later references which might indicate that they recognized that this warranty was in issue.[7]

Thus, although the trial court's holding that plaintiff had failed to prove reliance properly disposed of the implied warranty of fitness for particular purpose in favor of defendant, it left undecided the question of whether an implied warranty of merchantability arose and whether a breach of that warranty occurred.

Defendant contends for the first time on appeal that the implied warranty of merchantability was disclaimed or waived in accordance with ORS 72.3160 which deals with the exclusion or modification of warranties. Evidence was offered that defendant sold the truck "just as is." From such evidence the trial court could have found that the warranty had been excluded. ORS 72.3160(3)(a) states:

---

[7] During oral argument on defendant's motion for nonsuit defendant raised a Statute of Frauds argument, stating:

"There is no basis, without a contract, for an implied warranty for merchantability or for a specific purpose. * * *"

And later during argument on defendant's motion to strike general and consequential damages, plaintiff argued:

"The second count realleges all of the operative facts set forth in the first count. It seeks a recovery on the same set of operative facts, but on the theory of merchantability, an implied warranty that is described and set forth in 72.3140."

"Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; * * *."

In addition, if the trial court had found that the implied warranty of merchantability was not excluded, the question remains whether the warranty was breached; in other words, was the truck "merchantable"? On this question plaintiff offered evidence of a series of mechanical breakdowns; defendant pointed to testimony of plaintiff's employee that the truck was worth the price paid on the date it was delivered.

We cannot state as a matter of law that the warranty was excluded, or, if not excluded, that the warranty was breached. Nor can we assume that the trial court made such findings. *Briscoe v. Pittman,* 268 Or 604, 607, 522 P2d 886 (1974).

Since the trial court erroneously concluded that "reliance" was a necessary element of the implied warranty of merchantability, it did not make findings of fact on the issues of exclusion and, if necessary, breach of the warranty. Therefore, this case must be remanded for further findings of fact and the entry of a new judgment consistent with those findings. *See Community Bank v. U.S. Bank,* 276 Or 471, 478-79, 555 P2d 435 (1976); *Briscoe v. Pittman, supra,* at 609.

Reversed and remanded.