Argued and submitted November 9, 1983, reversed and remanded July 25, 1984

# BARTON,
*Appellant,*

*v.*

# TRA-MO, INC.,
*Respondent.*

## (41-786; CA A26102)

686 P2d 423

Thomas O. Alderman, Eugene, argued the cause and filed the briefs for appellant.

Allan M. Muir, Portland, argued the cause for respondent. With him on the brief was Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is a breach of warranty action involving the application of the Uniform Commercial Code (UCC). Plaintiff-buyer, who is engaged in the sale of plastic auxiliary fuel tanks for diesel-powered passenger cars, brought the action against defendant-seller, a corporation, which manufactures roto-molded plastic products. Plaintiff claims that defendant, contrary to its express and implied warranties, produced diesel fuel tanks which were defective, because the process and material used in production caused the tanks to bulge, split and shatter under normal usage. He sought to recover money damages resulting from defendant's alleged breach. He appeals from a judgment on a verdict for defendant. We reverse and remand.

Before his arrangement with defendant, plaintiff had contracted with Shaw Plastics to manufacture diesel fuel tanks in molds fabricated and designed by plaintiff. Cross-link polyethylene, a material with high impact strength, and a roto-molding technique were used in the manufacture of those tanks. In June, 1979, Shaw Plastics found that it could no longer produce enough tanks to meet plaintiff's demand. Thereafter, plaintiff contacted defendant's plant manager to see if defendant would be able to produce the quantity of tanks he required. When defendant presented plaintiff with a quotation for the cost of tanks manufactured with the cross-link material, plaintiff decided that it was too expensive, and the parties discussed the various other materials used by defendant in manufacturing products. At that time, defendant's manager showed plaintiff some waste and water holding tanks which it had made for another customer out of a high-density polyethylene, a material with a lesser impact strength than cross-link and less expensive. The strength of the material was demonstrated by hitting the tanks with a machinist's hammer and by dropping them off a fork lift after filling them with water. There was testimony that defendant's plant manager told plaintiff, "This is really tough material. I think it will do the job."

Defendant also produced five to eight tanks out of plaintiff's molds, using the same high density material, and

subjected them to strength tests.[1] Plaintiff was not charged for those tanks. The parties then entered into an agreement whereby defendant agreed to manufacture plaintiff's requirements for fuel tanks out of the high-density material and for plaintiff to take the tanks to his shop and insert the fuel holes. Plaintiff purchased approximately 2,640 diesel tanks from defendant, of which approximately 617 were allegedly defective.

■ Warranties under the sales provisions of the commercial transactions statutes (ORS chapter 72) are not limited to verbal representations made by a seller, but extend to samples or models exhibited by a seller as a representation of what he is selling, which the code recognizes as symbolic statements that create express warranties when they are made part of the basis of the bargain between the buyer and the seller.[2] In this case, plaintiff, as one count in his first claim for relief, alleged breach of express warranty by sample.

Although it is not altogether clear from the pleadings, it appears that the alleged samples consisted of both the waste and water holding tanks defendant had produced for another customer and the preproduction tanks defendant made for plaintiff using his molds.[3] At the close of plaintiff's

---

[1] There is a conflict in the testimony as to the type of strength tests which were conducted on these tanks, i.e., whether they were the same strength tests that had been performed on the waste and water holding tanks defendant produced for another customer.

[2] Plaintiff based this breach of express warranty by sample count on ORS 72.3130(1)(c), which is the Oregon codification of UCC 2-313(1)(c):

"(1) Express warranties by the seller are created as follows:

"* * * * *

"(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."

[3] The relevant portion of plaintiff's second amended complaint reads:

"II

"In connection with said sales and purchases, Defendant exhibited to Plaintiff a sample tank upon which Defendant caused certain operations to be performed, to-wit:

"a) said tank was pounded with a 20-ounce hand sledge hammer at a man's full strength, without damage to the tank; and

case-in-chief, defendant moved for a directed verdict on the breach of express warranty by sample count on the basis that plaintiff had introduced no evidence showing that those tanks constituted "samples," as that term is defined in Official Comment 6 to UCC § 2-313.[4] It claimed that, in order to be a "sample," the tanks had to have been "drawn from the bulk of the goods which is the subject matter of the sale" and that the initial tanks did not fit the UCC definition of a sample. Defendant argued that the tanks were merely presented for plaintiff's precontract inspection and approval and that, although they might arguably be "models," as that term is defined in Comment 6,[5] they were not "samples."

After defendant's motion, plaintiff moved to amend his pleadings to substitute the word "model" for "sample." He agreed with defendant that the tanks were more appropriately defined as "models" rather than "samples" under the UCC. He argued that, because evidence of express warranty by model came into the record without objection by defendant, he was entitled to amend his complaint and to have the case submitted to a jury, because the issue of express warranty by model had been tried by the implied consent of the parties and should be treated as if it had been raised in the pleadings pursuant to ORCP 23B.[6] The trial court granted defendant's

"b) said tank was filled with water and dropped onto a solid surface from a height of ten feet, without damage to the tank.

"The operations described in subparagraphs (a) and (b) of this Paragraph II were performed upon another tank which Defendant represented had been exposed to the elements for six months, without damage to the tank.

"The said samples were part of the basis of Plaintiff's bargain with Defendant."

[4] UCC § 2-313, Comment 6 (1981 ed), defines a "sample" as an item "actually drawn from the bulk of the goods which is the subject matter of the sale."

[5] A "model" is defined in Comment 6, *supra,* n 4, as an item "which is offered for inspection when the subject matter [of the sale] is not at hand and which has not been drawn from the bulk of the goods."

[6] ORCP 23B provides:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court

motion for a directed verdict on the basis that the preproduction tanks constituted neither models nor samples[7] and, accordingly, found it unnecessary to allow plaintiff to amend his pleadings to conform to the evidence.[8]

Plaintiff assigns error to the trial court's allowance of defendant's motion for a directed verdict and its denial of his motion to amend his complaint. Although plaintiff makes four other assignments of error, we believe this particular assignment is the touchstone of the appeal.[9]

We first consider whether the trial court erred in directing a verdict for defendant. Our review is limited to whether there was legally sufficient evidence from which the jury could have found that an express warranty by model had been created. *See Autzen v. Taylor Lumber Sales, Inc.*, 280 Or 783, 572 P2d 1322 (1977); *James v. Carnation Company*, 278 Or 65, 69, 562 P2d 1192 (1977); *Holmes v. Oregon Assn Credit Union*, 52 Or App 551, 558-59, 628 P2d 1264 (1981).

Plaintiff concedes that the tanks were not "samples" but argues that they constituted "models" of defendant's manufacturing process and of the strength of the high density polyethylene material. In support of his position, plaintiff presented evidence that he had been induced to enter into the

that the admission of such evidence would prejudice such party in maintaining an action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

[7] It should be noted that the trial court's ruling was limited to the issue of whether the preproduction tanks constituted models or samples. It does not appear to address plaintiff's argument that the waste and water holding tanks made for another customer were also models. We believe that plaintiff properly raised the issue of whether either or both the waste and water holding tanks or the preproduction tanks were models. It is not clear from the record why the trial court limited its ruling to the preproduction tanks.

[8] The trial court ruled in part, as follows:

"Now, as to the point about 'sample' or 'model,' I am going to grant the Directed Verdict on that because I don't think that there is any question at this point that those first five to eight tanks that were created by the Defendant were not samples, they were not models, they were not prototypes; what they really were was just the first tanks produced on a limited basis and therefore there cannot be an express warranty by way of either sample or model. And, of course, this obviously avoids all—although that is not what I am trying to do by the ruling—the question of alleging under 23B the word 'sample' to 'model,' because it just wouldn't make any difference because they were neither."

[9] Because of our disposition of the case, there is no need to address the other assignments of error.

contract with defendant as a result of his inspection of the tanks supplied. There was testimony that the tanks designed by defendant for third parties were submitted to plaintiff so that he could inspect and examine the strength of high-density polyethylene, a less expensive, alternative material. There was also testimony that defendant represented that this material would be a sound choice of material out of which to manufacture fuel tanks.

■　　Defendant admitted manufacturing the preproduction tanks for plaintiff's inspection. Those tanks were produced before the parties reached a final agreement. There is also testimony that plaintiff was not charged for those tanks. Plaintiff suggests that this is additional evidence that they were offered as models. We conclude that there was legally sufficient evidence from which a jury could have found that an express warranty by model had been created when defendant manufactured the initial five to eight tanks out of plaintiff's mold for his inspection.

Regarding its previously-made water tanks fabricated for another customer, defendant argues that they are too dissimilar to allow comparison. That may be. However, our analysis does not rest on holding that the water tanks made for another customer were models. Their significance in this case is that they demonstrated the material and the process by which defendant proposed to manufacture tanks for plaintiffs. The real focus of our analysis is on the preproduction tanks made from plaintiff's molds. Clearly, the jury could have found that those tanks were presented to plaintiff as a model of the strength of the material and of defendant's manufacturing process.

■　　This brings us to the second prong of the model analysis. Once it is determined both that the item under consideration is in fact a "model" and what characteristics the goods must display in order to conform to the model, it must then be determined whether the models were made part of the basis of the bargain between the parties. Especially here, when the model tanks were produced and exhibited to plaintiff *before* the parties reached a final agreement, there is evidence from which the jury could find that the models were fairly to be regarded as part of the contract. The basis of the bargain requirement is satisfied.

■     Defendant also urges that, even if plaintiff properly contended that the preproduction tanks were "models," the express warranty by model theory would still fail, because plaintiff neither pled nor carried his burden of going forward with quantitative evidence establishing that the tanks later produced by defendant did not conform to preproduction models. We do not agree.

In the first place, plaintiff testified that, when he met with defendant's plant manager before entering into an agreement, the plant manager offered to run samples from plaintiff's molds. He also offered a small molded tank that was in the plant to plaintiff to demonstrate the durability of the material defendant planned to use in manufacturing plaintiff's fuel tanks. He then demonstrated the durability of the material by taking a machinist's hammer and striking the tank and handed plaintiff the hammer to perform the same test. The tank did not break. Plaintiff also testified that, after the preproduction tanks had been manufactured for his inspection, the plant manager and plaintiff struck several blows to them with a machinist's hammer and they did not break. At trial, plaintiff introduced two tanks which had had the same impact tests administered. The first one was from plaintiff's "graveyard," which had come from a later production run and broke when struck with a hammer. The second tank was from the first production run[10] and did not break when struck with a hammer. Furthermore, the record is replete with testimony that tanks produced from post-agreement production runs broke, split or shattered when tested in the above manner or were returned without testing, because they broke or split apart while in use by a customer.

In the second place, there is evidence not only explaining that the post-agreement tanks were defective but why they were breaking apart. Plaintiff testified that on one occasion, when he was at defendant's plant observing a production run of his tanks, he observed defendant's employes mixing two powders together in preparation of the run. When he asked them about this process, they told him that they were

---

[10] Plaintiff no longer had any of the preproduction tanks at the time of trial. He, therefore, introduced a tank from the first production run, without objection by defendant, for demonstration of durability of materials.

using a low-density polyethelene, a softer material, to facilitate in the removal of the tanks from the molds. This softer material caused some of the tanks to bulge due to elasticity. These tanks also cracked when struck with a hammer. Plaintiff's expert also produced evidence of tensile, impact and permeation tests that he had conducted on post-agreement tank material which suggested that material other than high-density polyethelene had been used in the later manufacturing process. We believe that the record supports that plaintiff carried his burden of going forward with quantitative evidence that the tanks later produced by defendant did not conform to the models.

■ Defendant argues that, even if it was error not to present the express warranty claim to the jury, the court's ruling nevertheless is harmless. We do not agree. Simply because plaintiff did not prevail on his implied warranty claim is no indication that he was destined to defeat on his express warranty claim. Plaintiff was entitled to have both theories submitted for the jury's consideration.[11] *See, e.g.,* ORS 72.3170; *B.W. Feed v. General Equipment Co.,* 44 Or App 285, 605 P2d 1205 (1980); *Blockhead, Inc. v. Plastic Forming Company, Inc.,* 402 F Supp 1017 (D Conn 1975).

■ Finally, we consider whether plaintiff's motion to amend his complaint to allege breach of warranty by model instead of sample under ORCP 23B should have been allowed. ORCP 23B substantially liberalized the amendment of pleadings. What we have before us is actually nothing more than a dispute over semantics. To clarify the dispute and to bring his claim within the definitions of the UCC, plaintiff sought to amend his complaint to allege a breach of express warranty by model instead of by sample. Although there may have been

---

[11] In its argument of no prejudice, defendant appears to rely largely on a statement by the trial court suggesting that the inclusion of the claim would not have affected the outcome. The trial judge referred to his years of viewing juries and noted that "if you are not going to prevail on" the implied warranties, "you are not going to prevail as to" express warranties. Although we do not dispute what may have been the experiences and courtroom observations of the trial judge, we believe that there is a strong likelihood that a buyer could have greater success in an action on an express warranty. First, an express warranty is more difficult to disclaim than an implied warranty. Second, it is less difficult to prove a breach of something which is explicitly stated than it is to prove a breach under a more general standard of "merchantability" or "fitness for a particular purpose." In any event, we are satisfied that plaintiff has clearly demonstrated that he has been prejudiced by the court's ruling.

some confusion in terminology, at all times the parties knew what items were being characterized as samples or models. The amendment would neither have enlarged the issues nor added a new claim and, therefore, should have been allowed. *See Holmes v. Oregon Assn Credit Mgmt, supra.* Furthermore, defendant failed to object to the introduction of evidence supporting plaintiff's argument that the tanks constituted models, and defendant offered no showing of prejudice. It thereby impliedly consented to trial of the issue. *See Mund v. English,* 69 Or App 289, 684 P2d 1248 (1984).

Reversed and remanded.