Joseph C. ABELE, Plaintiff,

v.

**BAYLINER MARINE CORPORATION,**
et al., Defendants.

No. 3:96 CV 7719.

United States District Court,
N.D. Ohio,
Western Division.

Oct. 31, 1997.

Randall C. Dixon, John Armin Blaufuss, Dixon & Dixon, Toledo, OH, for Plaintiff.

Jennifer J. Dawson, Kirk L. Somers, Marshall & Melhorn, Toledo, OH, John A. Coppeler, Randolph E. Digges, Flynn, Py & Kruse, Port Clinton, OH, for Defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on Defendants' separate motions for summary judgment (Doc. Nos. 27 & 33), and Plaintiff's unopposed motion to bifurcate his claims for attorney fees (Doc. No. 31). For the following reasons, Defendants Bayliner Marine Corporation and Brunswick Corporation's motion for summary judgment will be granted in part and denied in part. Defendant Bob Clemons Boats, Inc.'s motion for summary judgment will be granted in part and denied in part. Plaintiff's motion to bifurcate will be granted.

### I. BACKGROUND

On May 23, 1995, Plaintiff purchased a 23–foot power boat from Defendant Bob Clemons Boats, Inc. ("Clemons"). The boat was manufactured by Defendant Bayliner Marine Corporation and contained an engine built by Defendant Brunswick Corporation.

The sales contract between Plaintiff and Clemons provided that:

> Purchaser agrees that all terms and conditions, including those on the reverse side, are part of this Agreement, and that ALL EXPRESS WARRANTIES AND IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE EXCLUDED FROM THIS TRANSACTION AND DO NOT APPLY TO THE GOODS SOLD.

The "additional terms and conditions" on the reverse of the sales contract provided that:

> 7. ANY WARRANTY ON ANY NEW UNIT IS MADE BY THE MANUFACTURER ONLY AND NOT BY THE SELLER, WHO DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

> This agreement contains the entire understanding between buyer and seller and no other representation or inducement, verbal or written, has been made which is not set forth herein.

Plaintiff and Clemons also entered into a five-year service agreement on the engine, in which Clemons agreed:

> to repair, reimburse or at the Administrators option, replace for reasonable costs any of the components specifically listed if required due to a mechanical breakdown. Mechanical breakdown is defined as a failure of a defective part(s), of a covered component(s) or manufacturer's faulty workmanship on a covered component(s), as supplied by the manufacturer.

> The total of all benefits payable during the term of the Marine Service Agreement on outboard motors ... shall not exceed the FOB/POE Price as determined by the ABOS Blue Book Trade-in Guide. The limit of liability of the contractor shall in no event exceed the current high ABOS Blue Book value at the time of mechanical breakdown.

> EXCLUSIONS: THESE SERVICES ARE NOT COVERED

> 1. Any loss occurring while item is covered by manufacturer's or supplier's express warranty....

> 2. any failure resulting from water entering the engine via the carburetor or exhaust system. Any failure resulting from the failure of exhaust flapper valves....

> 5. Any loss for any damage caused by overheating regardless of the cause of overheating....

6. Any failures of/or caused by cracked heads and/or cracked blocks....

The boat's manufacturer, Bayliner Marine Corporation ("Bayliner") issued Plaintiff a limited warranty providing that:

[T]he Selling Dealer will .... [r]epair or replace any parts found to be defective in factory material or workmanship within one (1) year of the date of delivery.

This warranty does not apply to:

1. Engines ... carrying their own warranties.

Any implied warranty of merchantability is limited to the duration of this written warranty.

The engine's manufacturer, Brunswick Corporation ("Brunswick"), issued Plaintiff a limited warranty providing that:

I. We warrant each new production ... to be free from defects in material and workmanship....

III. Since this warranty applies to defects in material and workmanship, it does not apply to ... damage caused by ... [w]ater entering engine cylinder/s through the exhaust system or carburetor/s.

VI. Our obligation under this Warranty shall be limited to repairing a defective part, or at our option, refunding the purchase price or replacing such part or parts as shall be necessary to remedy any malfunction resulting from defects in material or workmanship as covered by this Warranty.

VII. ALL INCIDENTAL AND/OR CONSEQUENTIAL DAMAGES ARE EXCLUDED FROM THIS WARRANTY. WARRANTIES OF MERCHANTABILITY AND FITNESS ARE EXCLUDED FROM THIS WARRANTY. IMPLIED WARRANTIES ARE LIMITED TO THE LIFE OF THIS WARRANTY.

Shortly after taking possession of the boat, Plaintiff experienced numerous minor problems, including problems with the depth finder, the compass, the speedometer, the windshield wipers, oil leaking in the bilge, and a leaky sink. Clemons repaired all of these problems pursuant to the warranties, without charging Plaintiff.

In August, 1995, after approximately 23 total hours of use, the boat's engine failed. Clemons diagnosed the problem as a cracked head due to an overheated engine, replaced the engine without charging Plaintiff, and returned the boat to Plaintiff ten days later.

Plaintiff operated the boat successfully for most of the 1996 season. In September, 1996, after approximately 110 hours of use, the second engine failed. Clemons diagnosed the problem as broken exhaust flappers, and replaced the engine without charging Plaintiff.

Plaintiff refused to accept the newly repaired boat. By letter dated October 9, 1996, Plaintiff demanded that Clemons rescind the sale and refund his purchase money. Clemons refused Plaintiff's demand to rescind the transaction. Both manufacturers offered to repair Plaintiff's boat to his satisfaction, and to extend the warranties to 1997; Plaintiff refused that offer. Plaintiff retained possession of the boat. Plaintiff has refused to test the boat in the water, so it is not presently known whether Clemons' replacement of the engine was effectual. Plaintiff's expert has performed one experiment indicating that the boat sinks to an unacceptably low level in the water if it is loaded with more than 870 pounds.

On November 22, 1996, Plaintiff filed the instant action in this Court, seeking damages for what he claims is a substandard boat. In Count I of his complaint, he alleges that all defendants breached the express and implied warranties it made to him. In Count II, he alleges that all defendants violated the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, by breaching their warranties. In Count III, he alleges that all defendants violated the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev.Code §§ 1345.01 *et seq.*, by misrepresenting the quality of the boat. In Count IV he brings a products liability claim against all defendants. In Count V, he alleges that Defendant Clemons breached its contract with him.

The Defendants have moved for summary judgment on all counts. Plaintiff has filed response, and Defendants have replied thereto. The Court discusses the parties' contentions below.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

As an initial matter, the Court sets forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Of course, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### B. Counts I & II: Warranty Claims

In Count I, Plaintiff alleges that all defendants breached the express and implied warranties they made to him. At the time the boat was sold, Defendant Clemons expressly disclaimed all express and implied warranties of fitness, but did enter into an agreement to service the boat for five years.[1] Defendant Bayliner expressly warranted the boat, although not its engine, against defects for a period of one year. Defendant Brunswick expressly warranted the engine to be free from defects in materials and workmanship, and promised to repair any such defects.

Ohio's version of the Uniform Commercial Code, codified at Ohio Rev.Code chs. 1301–1310, sets forth the state law governing Plaintiff's warranty claims. A seller may disclaim implied warranties if the disclaimer is conspicuous, Ohio Rev.Code § 1302.29(B), and may limit the buyer's remedy to repair and/or replacement of the defective goods or parts, Ohio Rev.Code §§ 1302.29(D) & 1302.93(A)(1).

The purpose of an exclusive remedy by the seller to repair or replace the defective parts is to give the seller an opportunity to cure the defect: to make the goods conform while limiting risks by excluding direct and consequential damages. *General Motors Acceptance Corp. v. Jankowitz*, 216 N.J.Super. 313, 523 A.2d 695, 703 (1987). As a general rule, once a buyer accepts a defective good, the buyer must notify the seller of the breach and afford the seller the opportunity to cure the claimed defects. The right to cure has limits, however: "[t]he buyer ... is not bound to permit the seller to tinker with the article indefinitely in the hope that it may ultimately be made to comply with the warranty." *Tucker v. Aqua Yacht Harbor Corp.*, 749 F.Supp. 142, 146 (N.D.Miss.1990) (quoting *Orange Motors of Coral Gables, Inc. v. Dade County Dairies, Inc.*, 258 So.2d 319, 321 (Fla.Dist.Ct.App.1972)); *Wilk Paving, Inc. v. Southworth–Milton, Inc.*, 162 Vt. 552, 649 A.2d 778, 781 (1994). In the instant case, the exclusive remedy of repair and/or replacement of defective parts fails of its essen-

---

1. Under the Magnuson–Moss Act, a supplier who enters into a service contract which applies to a consumer product cannot disclaim its implied warranty of merchantability with respect to that product. 15 U.S.C. § 2308.

tial purpose if, after numerous attempts to repair, the boat does not operate free of defects. "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose," the buyer has access to the full panoply of remedies provided by the UCC. Ohio Rev.Code § 1302.93(B).

■ One of those remedies is revocation of acceptance. A buyer may revoke his acceptance of a nonconforming good whose nonconformity substantially impairs its value to him, so long as such revocation of acceptance occurs within a reasonable time after the buyer discovers the ground for it. Ohio Rev. Code § 1302.66(A) & (B). The buyer is not required to elect between revocation of acceptance and recovery of damages for breach; both remedies are available. *Aluminum Line Prods. Co. v. Rolls–Royce Motors, Inc.*, 66 Ohio St.3d 539, 543, 613 N.E.2d 990, 993 (1993).

■ The threshold test for revocation of acceptance is whether the defect substantially impairs the value of the goods to the buyer. Ohio Rev.Code § 1302.66(A). The test is a subjective one, and may be met by showing that the nonconformities undermine the buyer's faith in the integrity and reliability of a vehicle purchased by him. *McCullough v. Bill Swad Chrysler–Plymouth, Inc.*, 5 Ohio St.3d 181, 186, 449 N.E.2d 1289, 1294 (1983). On the other hand, the buyer may not revoke acceptance on the basis of trivial defects or defects which may easily be corrected. *Pratt v. Winnebago Indus., Inc.*, 463 F.Supp. 709, 714 (W.D.Pa.1979).

In Count II, Plaintiff alleges that all defendants violated the Magnuson–Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, by breaching their warranties. The Magnuson–Moss Act provides that if a chattel "contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product." 15 U.S.C. § 2304(a)(4). It also permits a "consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the Magnuson–Moss Act], or under a written warranty, implied warranty, or service contract [to] bring suit for damages and other legal and equitable relief." 15 U.S.C. § 2310(d)(1).

■ Thus, in order to bring a claim for breach of warranty under either Ohio state law or the Magnuson–Moss Warranty Act, a plaintiff must show: (1) that the goods are nonconforming; (2) that the seller was given a reasonable opportunity to cure the defects; (3) and that the seller failed to repair the defects within a reasonable time or within a reasonable number of attempts.

Defendant Clemons has moved for summary judgment on Plaintiff's breach of warranty claim on the ground that it issued no warranties of any kind to Plaintiff, and that it met its repair obligation under the service agreement. Defendants Bayliner and Brunswick have moved for summary judgment on Plaintiff's breach of warranty claim on the ground that they have honored the warranties by repairing and/or replacing any parts of Plaintiff's boat that may have been defective. Plaintiff responds that the warranties have failed of their essential purpose, because he is not satisfied with the boat.

The parties do not dispute that Plaintiff has met the first element of the test: he has presented evidence that the boat he purchased was nonconforming. He has enumerated defects including problems with the engine, the depth finder, the compass, the speedometer, the windshield wipers, oil leaking in the bilge, and a leaky sink. They dispute whether Plaintiff has met the second and third elements: whether he has shown that a triable issue of fact exists as to whether he gave Defendants a reasonable opportunity to cure the defects, or whether the defects were, in fact, repaired.

■ Ordinarily, the issue of whether a seller has been given a reasonable opportunity to cure a consumer product's defects is a question for the finder of fact. In this case, however, the Court finds as a matter of law that Plaintiff did not afford Defendants a sufficient opportunity to cure. Plaintiff attempted to revoke acceptance of the boat immediately after the second engine failed. Plaintiff's refusal to afford Defendant a second opportunity to repair or replace the boat's engine, over a year after the first

repair attempt, and after 110 hours of use, was a failure to give Defendants a reasonable opportunity to cure. Courts addressing the issue of what constitutes a "reasonable opportunity to cure" consistently hold that a buyer cannot justifiably revoke acceptance without giving a seller a second opportunity to cure a product defect. *See, e.g., Tucker v. Aqua Yacht Harbor Corp.,* 749 F.Supp. 142 (N.D.Miss.1990); *Pratt v. Winnebago Indus., Inc.,* 463 F.Supp. 709 (W.D.Pa.1979); *Carl v. Spickler Enters., Ltd.,* 165 Wis.2d 611, 478 N.W.2d 48 (App.1991). Liability has been found only where the product contained numerous, serious defects, and those defects went unrepaired despite repeated attempts by the seller to repair them. *See, e.g., Mason v. Porsche Cars of N. Am., Inc.,* 688 So.2d 361 (Fla.Ct.App.1997); *Music Acceptance Corp. v. Lofing,* 32 Cal.App.4th 610, 39 Cal.Rptr.2d 159 (1995); *King v. Taylor Chrysler–Plymouth, Inc.,* 184 Mich.App. 204, 457 N.W.2d 42 (1990); *Laiosa v. Camelot AMC/Jeep, Ltd.,* 113 A.D.2d 145, 495 N.Y.S.2d 285 (N.Y.App.Div.1985).[2]

The parties agree that Clemons repaired all of the boat's minor defects—the depth finder, the compass, the speedometer, the windshield wipers, oil leak, and leaky sink— and did so in a timely manner, and on the first try. The parties agree that Clemons replaced the first engine in a timely manner, and that the second engine operated for a year without Plaintiff reporting any problems. The parties agree that Clemons replaced the second engine in a timely manner, and there is no reason to believe that the second engine is defective. No claim has been made that Plaintiff has given Defendant any opportunity to cure the alleged problem of the boat sinking when it is loaded with more than 870 pounds, or that Plaintiff was on notice that such problem might exist at the time he attempted to revoke his acceptance.

On these undisputed facts, Plaintiff has not made out a claim for breach of warranty.

Defendants' motions for summary judgment must be granted as to Counts I and II.

### C. Count III: Violation of Ohio Consumer Sales Practices Act

Plaintiff next alleges that all defendants violated the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev.Code §§ 1345.01 *et seq.,* by (1) representing that the boat had performance characteristics, uses, and benefits that it did not have; (2) breaching their repair warranties; (3) failing to disclose material defects about which they knew or should have known; (4) representing that repairs had been made when such was not the fact; (5) representing that the boat was of a standard, quality, and grade which it was not; (6) refusing without justification to refund his money. He also alleges that Defendant Bayliner violated Ohio Rev.Code § 1329.01 by doing business in the State of Ohio without registering its trade name with the Secretary of State.

#### 1. Representation That the Boat Had Performance Characteristics, Uses, and Benefits That it Did Not Have

##### a. Assertions Made Prior to Sale of the Boat

Plaintiff first alleges that Defendant Clemons falsely represented that the boat would go faster than 40 mph, and that it falsely touted the boat's quality and reliability generally. He alleges that he purchased the boat partly in reliance on Defendant Bayliner's brochure stating that the boat was unsurpassed for trouble-free operation.

Defendants respond that they cannot be found liable under the OCSPA because the contract for the sale of the boat expressly provided that such written contract "contain[ed] the entire understanding between buyer and seller and no other representation or inducement, verbal or written, has been

---

**2.** Although it does not apply to boats, and therefore does not control this case, Ohio's motor vehicle "lemon law" is instructive in this matter. It establishes a presumption that a "reasonable number" of repair attempts have been made only where (1) three or more attempts have been made to cure the same nonconformity; (2) the vehicle *is out of service for a total of thirty days*

in one year; (3) eight or more attempts have been made to cure a nonconformity that substantially impairs the value of the motor vehicle; or (4) *at least one failed attempt has been made to* cure a nonconformity that is likely to cause death or serious bodily injury if the vehicle is driven. Ohio Rev.Code § 1345.73. None of the above conditions has been met in the case at bar.

made which is not set forth herein;" thus, any representations made by them prior to the sale cannot form the basis of a claim under the OCSPA.

■■■■ The entire written contract of the parties in this case consists of the sales agreement and the service agreement. Nothing in these documents incorporates the Bayliner brochure or sales representative's assurances. Ohio's version of the UCC permits the use of parol evidence to explain or supplement the terms of a written agreement, as long as those terms are consistent with the written agreement, "unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement." Ohio Rev.Code § 1302.05(B). Even where the writing itself is not intended to be a complete integration of the agreement, any written statements not incorporated in the written sales agreement must be shown to be a part of the bargain of the parties before they can form the basis of a claim under the OCSPA. *See Price Bros. Co. v. Philadelphia Gear Corp.*, 649 F.2d 416, 422 (6th Cir.1981). An express warranty is created whenever any affirmation of fact relating to the goods becomes part of the basis for the bargain between the parties. Ohio Rev.Code § 1302.26(A)(1).

■■■■ Thus, in order to make out a successful claim under the OCSPA, Plaintiff must show: (1) that the parties did not intent the written contract to be a complete and exclusive statement of the terms of the agreement; and (2) that Defendants' statements concerning the boat's performance characteristics were both consistent with and intended to be part of the contract. In determining whether the statement was intended to form part of the basis of the bargain or represents merely the seller's "puffing" or sales talk, the Court considers the circumstances surrounding the sale, the reasonableness of the buyer in believing the seller, the reliance placed on the seller's statement by the buyer, and whether the seller assumes to assert a fact of which the buyer is ignorant, or whether he merely states an opinion or expresses a judgment about a thing. *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286, 1290–91 (6th Cir.1982); *Price Bros.*, 649 F.2d at 422; *Slyman v. Pickwick Farms*, 15 Ohio App.3d 25, 28, 472 N.E.2d 380, 384 (1984).

The seller need not use formal words such as "warrant" or "guarantee" to create an express warranty, but "an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." Ohio Rev.Code § 1302.26(B).

■■■■ The first issue the Court must determine is whether a reasonable factfinder could find that the parties did not intend the written contract to be a "complete and exclusive statement" of the terms of their agreement. Even where an "integration" or "merger" clause exists, the Court must look beyond the four corners of the document to all of the facts and circumstances surrounding the agreement to determine the intentions of the parties. *Camargo Cadillac Co. v. Garfield Enters., Inc.*, 3 Ohio App.3d 435, 437–39, 445 N.E.2d 1141, 1144–45 (1982); *accord In re Jasin*, 80 B.R. 418, 420 (Bankr.N.D.Ohio 1987). Ohio courts have sometimes found that integration clauses purporting to disclaim express warranties were ineffective, where the course of the parties' negotiations indicated that the buyer had reasonably relied, in making the purchasing decision, on an assertion of fact made by the seller. *See, e.g, Barksdale v. Van's Auto Sales, Inc.*, 62 Ohio App.3d 724, 577 N.E.2d 426 (1989) (used car salesman's statement that car's transmission was in good working order created an express warranty, despite disclaimer in subsequently created written contract); *Ohio Savings Bank v. H.L. Vokes Co.*, 54 Ohio App.3d 68, 560 N.E.2d 1328 (1989) (seller's description of air conditioning unit created an express warranty); *Slyman, supra* (seller's statement that racehorse's respiratory condition was good created an express warranty); *Society Nat'l Bank v. Pemberton*, 63 Ohio Misc. 26, 409 N.E.2d 1073 (1979) (salesman's statement that truck was "just right for plowing snow" created an express warranty).

■■■■ The general statements regarding the boat's quality made by Defendants and their agents clearly cannot form the basis of a claim under the OCSPA.

The habit of vendors to exaggerate the advantages of the bargain that they are offering to make is a well recognized fact.

An intending purchaser may not be justified in relying upon his vendor's statement of the value, quality or other advantages of a thing that he is intending to sell as carrying with it any assurance that the thing is such as to justify a reasonable man in praising it so highly.

\* \* \* \* \* \*

This is true particularly of loose general statements made by sellers in commending their wares, which are commonly known as "puffing," or "sales talk." It is common knowledge and may always be assumed that any seller will express a favorable opinion concerning what he has to sell; and when he praises it in general terms, without specific content or reference to facts, buyers are expected to and do understand that they are not entitled to rely literally upon the words. Such statements like the claims of campaign managers before election, are rather designed to allay the suspicion which would attend their absence than to be understood as having any relation to objective truth.

Thus no action lies against a dealer who describes the automobile he is selling as a "dandy," a "bearcat," a "good little car," and a "sweet job," or as "the pride of our line," or "the best in the American market."

*Presidio Enters., Inc. v. Warner Bros. Distrib. Corp.*, 784 F.2d 674, 682 (5th Cir.1986); *see also Jordan v. Paccar, Inc.*, 37 F.3d 1181 (6th Cir.1994) (seller's representation that truck was "rock-solid" was mere commercial puffery).

▬▬▬ The situation is different with regard to Clemons' alleged representation that the boat would go faster than 40 mph, and Bayliner's alleged representation that the boat was unsurpassed for trouble-free operation. Those factual assertions went beyond mere "puffing," and Plaintiff has alleged that he purchased the boat in reliance on those assertions. *See Barksdale; Ohio Sav. Bank; Slyman; Society Nat'l Bank, see also Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939 (3d Cir.1993) (seller's assertion that its motor oil offered better protection against engine wear

is not puffery); *American Home Prods. Corp. v. Johnson & Johnson*, 654 F.Supp. 568 (S.D.N.Y.1987) (claim that Tylenol gives unsurpassed relief is not puffery). Since those two assertions were statements of the sort that can give rise to an express warranty, and Plaintiff claims that they formed part of the basis of the bargain as far as he was concerned, the Court, cannot at this juncture, hold as a matter of law that those statements cannot give rise to a valid claim for violation of the OCSPA.

b. *Assertions Made Subsequent to Sale of Boat*

▬▬▬ Plaintiff next alleges that Defendants misrepresented that they had measured the distance between the engine exhaust elbow and the static water line ("scum line") and determined that the distance exceeded the engine manufacturer's installation specifications of 13. Plaintiff does not deny that an employee of Defendant Clemons made those measurements, and the distance did indeed exceed the manufacturer's installation specifications, but claims that Defendants are liable for a deceptive sales practice because the measurements were taken while the boat was out of the water.

Plaintiff's contention lacks merit. Defendants at no time claimed that the measurements were taken while the boat was in the water; nor has Plaintiff made any showing that the measurements were faulty. In fact, the measurements taken by Plaintiff's own expert, in the water, shown that the height of the exhaust elbow risers exceeds the manufacturer's specifications until the boat is loaded with at least 870 pounds of weight.[3] Plaintiff cannot prevail on his claim that Defendants violated the OCSPA when they represented to him that the distance between the exhaust risers and the static water line exceeded the manufacturer's specifications.

Defendants' motion for summary judgment must be denied on the portion of Plaintiff's claim alleging that Defendants misrepresented that the boat would travel faster than 40 mph and was unsurpassed for trouble-free

---

**3.** The record does not contain any information about the amount of weight the boat is designed to hold, so this figure is relatively meaningless.

operation; the motion must be granted on the remainder of this portion of Plaintiff's claim.

## 2. *Breach of Repair Warranties*

Plaintiff alleges that all defendants violated the OCSPA by breaching their repair warranties. As discussed above, there is no evidence that the repair warranties have been breached. Defendants' motion for summary judgment must be granted on this portion of Plaintiff's claim.

## 3. *Failure to Disclose Material Defects*

■ Plaintiff alleges that Defendant Clemons failed to disclose damage done to the boat while it was in for service. The alleged damage consisted of minor "shop damage," i.e., superficial scratches, which was repaired before the boat was returned to Plaintiff. Those allegations do not support a claim for a deceptive sales practice. Defendants' motion for summary judgment must be granted on this portion of Plaintiff's claim.

## 4. *Representation That Repairs Had Been Made When Such Was Not the Fact*

■ Plaintiff alleges that Defendants represented that repairs had been made when such was not the fact, but has not identified a single repair that Defendants claimed to make, but had not actually made. Defendants' motion for summary judgment must be granted on this portion of Plaintiff's claim.

## 5. *Representation That the Boat Was of a Standard, Quality, and Grade Which it Was Not*

Plaintiff alleges that Defendants represented that the boat was of a standard, quality, and grade which it was not. The factual underpinnings for this portion of Plaintiff's claim are the same as those supporting his claim that Defendants represented that the boat had performance characteristics, uses, and benefits that it did not have. The legal analysis of both claims is the same. As with the foregoing claim, Defendants' motion for summary judgment must be denied on the portion of Plaintiff's claim alleging that Defendants misrepresented that the boat would travel faster than 40 mph and was unsurpassed for trouble-free operation; the motion must be granted on the remainder of this portion of Plaintiff's claim.

## 6. *Unjustified Refusal to Refund Plaintiff's Money*

■ Plaintiff alleges that Defendants unjustifiably refused to refund Plaintiff's money when he attempted to revoke acceptance of the boat. Specifically, Plaintiff claims that he was entitled to revoke his acceptance because Defendants breached their repair warranties. As discussed above, however, there is no evidence that Defendants breached their repair warranties or that those warranties failed of their essential purpose. Therefore, Plaintiff's revocation of acceptance was invalid, and Defendant's refusal to refund Plaintiff's money was not unjustified. Defendants' motion for summary judgment must be granted on this portion of Plaintiff's claim.

## 7. *Bayliner's Failure to Register its Trade Name with the Secretary of State*

■ Finally, Plaintiff claims that Defendant Brunswick violated the OCSPA by doing business in the state of Ohio without registering its trade name with the Secretary of State in violation of Ohio Rev.Code § 1329.01. Failure to register a trade name with the Secretary of State is not, *per se*, an unfair or deceptive act or practice in violation of OCSPA. *Crull v. Maple Park Body Shop,* 36 Ohio App.3d 153, 521 N.E.2d 1099 (1987). Furthermore, there is no private right of action for a violation of § 1329.01. *Id.* Defendants' motion for summary judgment must be granted on this portion of Plaintiff's claim.

## 8. *Summary*

Defendants' motions for summary judgment on Count III must be denied as to Plaintiff's claims that Defendant Clemons falsely represented that the boat would go faster than 40 mph, and Defendant Bayliner falsely represented that the boat was unsurpassed for trouble-free operation. It must be granted on the remainder of Plaintiff's claims under the OCSPA.

## D. *Count IV: Products Liability*

Plaintiff next brings a products liability claim against all defendants. Defendants

have moved for summary judgment on the ground that Ohio law permits a plaintiff to bring a products liability claim only for personal injury or damage caused by a defective product to other property, and not for damage to the product itself. See *Chemtrol Adhesives, Inc. v. American Mfrs. Mut. Ins. Co.,* 42 Ohio St.3d 40, 44–45, 537 N.E.2d 624 (1989) (where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of the value or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule ... that purely economic interests are not entitled to protection against mere negligence, and so have denied the recovery.)

■ Plaintiff has stipulated that he cannot bring a products liability claim against Clemons, because he is in contractual privity with Clemons, but argues that he ought to be able to bring a claim against manufacturers Bayliner and Brunswick, because he is not in privity with them. He cites to no statutory or case law supporting his claim that he is entitled to bring a products liability action against the manufacturer of an allegedly defective product that has caused no damage to anything except itself, merely because he is not in privity of contract with the manufacturer. This Court is aware of no such law, and Plaintiff's argument flies in the face of blackletter products liability law. Defendants' motions for summary judgment must be granted as to Count IV.

### E. Count V: Breach of Contract

Finally, Plaintiff alleges that Defendant Clemons breached its contract with him. Clemons has moved for summary judgment on the ground that it has met all of its contractual obligations: it delivered Plaintiff the boat he ordered, and repaired all of the defects Plaintiff asked it to repair. Plaintiff has not opposed this portion of Clemons' motion for summary judgment. Accordingly, Clemons' motion for summary judgment will be granted as to Count V.

### III. MOTION TO BIFURCATE

■ Plaintiff has moved to bifurcate his claims for an award of attorney fees under the Magnuson–Moss Act and OCSPA, so his motion for fees and supporting affidavits will not be due until after trial on the merits.

Defendants have not opposed Plaintiff's motion, and the Court finds that granting such motion would serve judicial economy. Accordingly, Plaintiff's motion to bifurcate will be granted.

### IV. CONCLUSION

For the foregoing reasons, Defendant Bob Clemons Boats, Inc.'s motion for summary judgment is denied as to Plaintiff's claim that Clemons misrepresented that the boat could travel faster than 40 mph and granted on all other claims. Defendant Bayliner Marine Corporation's motion for summary judgment is denied as to Plaintiff's claim that Bayliner misrepresented that the boat was unsurpassed for trouble-free operation, and granted on all other claims. Defendant Brunswick Corporation's motion for summary judgment is granted. Plaintiff's motion to bifurcate his claims for attorney fees is granted.

IT IS SO ORDERED.