NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0988n.06

No. 13-3364

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Nov 19, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NANCY L. KUNS, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| FORD MOTOR COMPANY, | ) | **O P I N I O N** |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE:     COLE, CLAY, Circuit Judges; BERTELSMAN, District Judge.[*]

COLE, Circuit Judge.  Plaintiff-Appellant Nancy Kuns appeals the district court's order

granting summary judgment in favor of Defendant-Appellee, Ford Motor Company, on Kuns's

claims that Ford violated the federal Magnuson-Moss Warranty Act and breached its express

warranty under Ohio law.  For the reasons addressed below, we affirm.

**I.  BACKGROUND**

**A.  Factual Background**

In December of 2009, Kuns purchased a new 2010 Mercury Mariner from the Liberty Ford

dealership in Vermillion, Ohio.  About a year later, as Kuns's husband was closing the rear liftgate,

its glass window suddenly "exploded and shattered." (*Id.*)  After looking over the warranty supplied

---

[*]The Honorable William O. Bertelsman, United States Senior District Judge for the Eastern
District of Kentucky, sitting by designation.

by Ford, Kuns and her husband determined that it would not cover the broken window, so they took the car to a repair shop not associated with Ford to have the glass replaced. Then, just over a month after the first incident, the rear window shattered again, this time while Kuns's daughter was closing the liftgate. At this point, Kuns became aware that other owners of the 2010 Mariner had experienced similar breakages, and she asked the dealership to replace the window at no charge to her. The dealership initially refused, explaining that the initial repair had not been made by a Ford-authorized entity, but after Kuns spoke with another Ford representative by phone and threatened to stop making payments on the vehicle, Ford agreed to replace the window. Liberty Ford then completed the repair.

In the course of this litigation, Kuns discovered that, by the fall of 2010, Ford was aware of problems with the rear liftgate glass. Over the following months, Ford issued several Technical Service Bulletins ("TSBs") and other documents notifying Ford dealerships and the National Highway Traffic Safety Administration ("NHTSA") of the defect and instructing dealerships to replace the glass using a revised striker design—essentially, a different means of affixing the glass to the liftgate. In one document, Ford acknowledged that "warranty coverage normally does not include glass repairs," but announced that, due to the defect, "Ford would cover the cost of glass repair" under its warranty "if there is no evidence of impact or external damage."

## B. Procedural History

In July of 2011, Kuns filed her complaint against Ford in the Northern District of Ohio alleging violations of the Magnuson-Moss Warranty Act ("MMWA"), breach of express warranty, and breach of implied warranty. The district court requested briefing to determine whether it had

subject matter jurisdiction. The court determined that it did not have jurisdiction under the MMWA, 15 U.S.C. § 2031 *et seq*, which requires a class to consist of at least one hundred named plaintiffs. *See Kuns v. Ford Motor Co.*, 926 F. Supp. 2d 976, 980 (N.D. Ohio 2013). However, after allowing Kuns to file an amended complaint, the court held that it nevertheless had jurisdiction pursuant to the Class Action Fairness Act ("CAFA"). Neither party now challenges this court's or the district court's jurisdiction.

After resolving the jurisdictional question, the district court granted Ford's motion for summary judgment. The court determined that Ohio law applied, and held that Kuns could not successfully pursue a claim that Ford had violated the MMWA or Ohio law pertaining to warranties because Kuns had failed to give Ford a reasonable opportunity to repair the defect after the first breakage, and because Ford's reluctance to repair the window after the second breakage was justified by the fact that Ford had not made the prior repair. Additionally, the court rejected Kuns's argument that Ford's issuance of TSBs acknowledging a defect in the window design "either expanded the new vehicle warranty or created an additional, separate warranty." Lastly, the court dismissed Kuns's claims that Ford violated express and implied warranties, finding that no express warranty existed, and that the applicable Ohio law does not recognize a cause of action for breach of implied warranty where the parties are not in privity of contract. Kuns appeals the district court's dismissal of her claims based on the MMWA and the express warranty only.

## II. DISCUSSION

**A. Federal Court Jurisdiction**

As a threshold matter, we must ensure that we have subject matter jurisdiction over Kuns's claims, even though neither party raises the question on appeal. *See Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) (Cole, <u>Gibbons</u>, Bell, D.J.) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*."). The district court, in its memorandum opinion, identified two potential problems with its jurisdiction: first, the jurisdictional requirements of the Magnuson-Moss Warranty Act, and second, the amount-in-controversy requirement imposed by the Class Action Fairness Act.

The district court held that it had jurisdiction over Kuns's claims under the CAFA and not under the MMWA. To bring a class action pursuant to the MMWA, a complaint must list at least one hundred named plaintiffs. *See* 15 U.S.C. § 2310(d)(3). Kuns is the only named plaintiff in her case. However, the court reasoned that the CAFA—the more recent of the two statutes— "can render a district court a 'court of competent jurisdiction' and permit it to retain jurisdiction where the CAFA requisites are met but the MMWA requisites are not." *Kuns*, 926 F. Supp. 2d at 980.

As the district court acknowledged, our circuit has not yet addressed the jurisdictional interplay of the CAFA and the MMWA. Nor, apparently, have most of our sister circuits. *But see Birdsong v. Apple, Inc.*, 590 F.3d 955, 957 n.1 (9th Cir. 2009) (finding that district court had jurisdiction pursuant to the CAFA over purported class action alleging violations of the MMWA and state law). However, district courts have, as a general rule, held that the CAFA effectively supercedes the MMWA's more stringent jurisdictional requirements. *See, e.g.*, *Keegan v. Am. Honda Motor Corp.*, 838 F. Supp. 2d 929, 954–55 (C.D. Cal. 2012) (citing several other cases);

*Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, 564 F. Supp. 2d 833, 837–38 (N.D. Ill. 2008);

*McCalley v. Samsung Elecs Am., Inc.*, No. 07-2141 (JAG), 2008 WL 878402, at *5 (D.N.J. Mar. 31,

2008); *Chavis v. Fidelity Warranty Servs., Inc.*, 415 F. Supp. 2d 620, 626 (D.S.C. 2006) ("CAFA

was passed with the clear intention of expanding federal court jurisdiction over class actions"

(internal quotation marks omitted)); *see also* S. Rep. No. 109-14, at 27 (2005), *reprinted in* 2005

U.S.C.C.A.N. 3, 27 (describing the CAFA as a "narrowly-tailored expansion of federal diversity

jurisdiction to ensure that class actions that are truly interstate in character can be heard in federal

court"). We agree that the district court had jurisdiction notwithstanding the MMWA's

jurisdictional limitations.

Turning to the second jurisdictional hurdle, the CAFA imposes an amount-in-controversy

requirement of $5 million in total.[1] The district court held that Kuns's amended complaint satisfied

this condition by "clarif[ying] that the size of the class at the time of the original complaint was over

800,000 members"—encompassing all individuals nation-wide who bought, leased, or otherwise

acquired an affected vehicle, and who either suffered a broken window or still retain the vehicle in

a defective state. Given the size of the class, "any relief exceeding $5.78 per class member" would

satisfy the requirement. *Kuns*, F. Supp. 2d at 982. Kuns alleges that repair of her shattered window

cost her $250 and her insurance company $358.52. We "do not dismiss a complaint for lack of

subject matter jurisdiction unless it appears to a legal certainty that the plaintiff[s] in good faith

---

[1]The CAFA imposes no minimum amount-in-controversy on individual named plaintiffs and requires only minimal diversity of citizenship. 28 U.S.C. § 1332(d)(2)(A). Because Kuns is an Ohio citizen and Ford is incorporated in Delaware and has its principal place of business in Michigan, (Kuns Br. 2), this requirement is met.

cannot claim the jurisdictional amount." *Charvat v. NMP, LLC*, 656 F.3d 440, 447 (6th Cir. 2011). Therefore, the district court correctly held that it had jurisdiction pursuant to the CAFA, 28 U.S.C. § 1332(d)(2). We have jurisdiction under 28 U.S.C. § 1291, authorizing appeals of final decisions from the district courts.

## B. Standard of Review

We review the district court's grant of summary judgment de novo. *United States v. Murphy*, 937 F.2d 1032, 1036 (6th Cir. 1991). Summary judgment may be granted only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When a party bears the burden of proof at trial and "fails to make a showing sufficient to establish the existence of an element essential to that party's case," summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment "bears the initial responsibility" of identifying those portions of the pleadings and the record demonstrating that no genuine issue of material fact exists. *Id*. at 323. The monmoving party must then respond by "set[ting] forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (internal quotation marks omitted).

## C. Violation of Magnuson-Moss Warranty Act

The MMWA imposes certain requirements on manufacturers and merchants who choose to issue consumer warranties. *See generally* 15 U.S.C. § 2301 *et seq*. For example, the Act mandates disclosure of particular information in warranties, requires that warranties be identified as either full or limited, and requires warrantors to remedy defective products "within a reasonable time and without charge." 15 U.S.C. §§ 2302–2304. Further, the MMWA creates a federal right of action

for violation of the Act's terms, as well as for breaches of warranty arising from state substantive law. 15 U.S.C. § 2310(d)(1). Therefore, the elements that a plaintiff must establish to pursue a cause of action for breach of warranty under the MMWA are the same as those required by Ohio law. *See Abele v. Bayliner Marine Corp.*, 11 F. Supp. 2d 955, 961 (N.D. Ohio 1997).

Kuns argues that Ford violated the MMWA because it "inadequately disclose[d] the terms of the [original] warranty," specifically, whether breakage of the rear window was covered, and because it did not communicate the contents of its TSBs to car owners, thereby informing them that the warranty covered glass breakages caused by the defect. Moreover, Kuns alleges that Ford "refused to authorize the necessary repairs to the rear window at no cost and without persistence by the consumer" following the second breakage.

We begin with Kuns's claim regarding the first incident. To state a claim under the MMWA, a plaintiff must present a "sustainable claim for breach of warranty." *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005). Accordingly, "a plaintiff must demonstrate that (i) the item at issue was subject to a warranty; (ii) the item did not conform to the warranty; (iii) the seller was given reasonable opportunity to cure any defects; and (iv) the seller failed to cure the defects within a reasonable time or a reasonable number of attempts." *Id.* (citing *Abele*, 11 F. Supp. 2d at 961). Indeed, the requirement that a warrantor have an opportunity to cure is codified at section 2310(e), which states that "no action . . . may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty . . . unless the person obligated under the warranty . . . is afforded a reasonable opportunity to cure such failure to comply." 15 U.S.C. § 2310(e); *see also Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 781

(7th Cir. 2011) ("To bring an action under § 2310(d)(1), the consumer must give the warrantor a reasonable opportunity to cure its failure to comply with an obligation under any written or implied warranty.") (internal quotation marks omitted); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1004 (D.C. Cir. 1986). With respect to class actions, "such reasonable opportunity [to cure] will be afforded by the named plaintiffs." 15 U.S.C. § 2310(e).

As the district court correctly determined, Kuns did not give Ford the opportunity to cure the initial defect in her rear window following the first breakage. Rather, as Kuns explains, her husband "reviewed the written warranty provided with the vehicle and concluded . . . that the rear glass breakage was not covered." Kuns then took the vehicle to a repair shop not authorized by Ford. Kuns argues that any request for a cure would have been futile in light of Ford's policy that window breakages were not typically covered by the new vehicle warranty. (Kuns Am. Compl., R.32-2, PageID 578; Ford Reply, R.29; PageID 461.) But Kuns does not cite—and we cannot locate—any case law indicating that this statutory requirement can be waived if a plaintiff subjectively determines that demand would be futile and does not so much as request the seller to cover the necessary repair. Moreover, at the time of the first breakage, Ford had already issued TSBs instructing its dealers that problems with the rear liftgate window were covered by the warranty. Thus, we agree with the district court, and we need not reach the question of whether Ford's warranty or other disclosures meet the requirements of the MWAA. Kuns has no cognizable claim for the first breakage.

Turning to the second breakage, the district court noted that, although Kuns may have "raise[d] a question of whether Ford cured the defect in a reasonable time and number of attempts,"

Kuns did not show that the replacement window, installed by a third party, was covered by Ford's

warranty. *See Temple*, 133 F. App'x at 268 (requiring showing that "the item at issue was subject

to a warranty"). Kuns argues that the warranty still applies because the defect pertains to the design

of the window—"the manner in which Ford affixed the rear window components to the glass"—

rather than to the window itself.

We agree with the district court's dismissal of Kuns' claim, but for different reasons. Ford's

warranty contains the following provision:

> [I]f your Ford vehicle is properly operated and maintained, and was taken to a Ford
> dealership for a warranted repair during the warranty period, then authorized Ford
> Motor Company dealers, will, without charge, repair, replace, or adjust all parts on
> your vehicle that malfunction or fail during normal use during the applicable
> coverage period due to a manufacturing defect in factory-supplied materials or
> factory workmanship.

It further states that the warranty "does not cover any damage caused by . . . the installation or use

of a non-Ford Motor Company part." However, as Kuns points out, it was not the window itself that

was defective, but the design of the liftgate components, as Ford itself acknowledged in its

communications with the NHTSA. Therefore, it is a question of fact whether Kuns's second

breakage was "*caused by* . . . the installation or use" of a non-Ford part, such that the warranty

would not cover a second repair of the glass.

Nevertheless, Ford *did* repair the second breakage without charge to Kuns. Granted, it took

some effort on her part: Kuns states that she "had more than one conversation" with Ford

representatives, and that she was originally told that the warranty did not apply because she

previously had the window replaced by a non-Ford servicer. However, after threatening to stop

making payments on her car, Kuns received a phone call from the dealership "the next day" agreeing to replace the glass at no charge. A copy of Kuns' service invoice, included in the record, indicates that the dealership accepted her vehicle for repair no later than January 31, 2011—three days after the breakage, which occurred on a Saturday—and that it completed the repair by that following Saturday, February 4. We accordingly decline to find a genuine issue of material fact as to whether the dealership "failed to cure the defects within a reasonable time and a reasonable number of attempts." *Temple*, 133 F. App'x at 268; *cf. Abele*, 11 F. Supp. 2d 955, 961–62 (noting that whether a seller has been given a reasonable opportunity to cure is normally a question of fact, but granting summary judgment where "Plaintiff attempted to revoke acceptance" immediately after the second product failure and "refus[ed] to afford Defendant a second opportunity to repair or replace" the defective component). In light of the fact that the broken window was a non-factory part, the dealership's initial refusal to replace it was not unreasonable, and it is uncontroverted that Kuns's vehicle was repaired within a week of the breakage.

Finally, Kuns alleges that Ford engaged in an additional violation of the MMWA by failing to inform vehicle owners of the conclusion it reached in its TSBs, that is, that rear window breakages due to the design flaw were covered by Ford's new vehicle warranty. Kuns points to regulations promulgated under the MMWA, specifically 16 C.F.R. § 701.3, which require warrantors to identify the "components covered by[,] and where necessary for clarification, excluded from the warranty." However, Kuns first raised this claim in her response to Ford's motion for summary judgment, and did not include it in her subsequent amended complaint. The portion of Kuns's amended complaint addressing the MMWA focuses solely on the vehicles' defective performance, not on Ford's

obligations to disclose particular information.  While the district court considered this claim, and dismissed it on the basis that the TSBs are not considered warranties within the meaning of the MMWA, the court need not have reached it at all, and we decline to do so.  *See Carter v. Ford Motor Co.*, 561 F.3d 562, 568 (6th Cir. 2009); *Tucker v. Union of Needletrades, Indust. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) ("A non-moving party plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.") (citation omitted).  We affirm the district court's grant of summary judgment to Ford on Kuns's MMWA claims.

## D.  Breach of Express Warranty

As noted above, the elements a plaintiff must show to pursue a breach-of-warranty claim in Ohio are the same as those required by the MMWA.  *See Abele*, 11 F. Supp. 2d at 961.  These include the requirement that the seller have a reasonable opportunity to cure the defect and that it fail to do so.  *See id.*  Thus, Kuns cannot prevail on a cause of action pertaining to the express warranty for all of the reasons addressed above.  The district court correctly dismissed Kuns's state-law claim.

### III.  CONCLUSION

We affirm the district court's grant of summary judgment in favor of Ford.